NILES LAND CO. v. CHEMUNG IRON CO. et al.

(Circuit Court of Appeals, Eighth Circuit. April 28, 1916.)

No. 4554.

1. LANDLORD AND TENANT ☞44(1)—LEASES—CONSTRUCTION.
    If there be doubt and uncertainty as to the meaning of covenants of a lease, they are construed most strongly in favor of the lessee.

    [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 108, 109; Dec. Dig. ☞44(1).]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. LANDLORD AND TENANT ⟨⟩103(1)—LEASES—FORFEITURE.

Forfeitures of leases are not favored in law or equity and will not be enforced, unless the right thereto is clear and conclusive.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 321, 324-327, 337-342; Dec. Dig. ⟨⟩103(1).]

3. MINES AND MINERALS ⟨⟩68(2)—MINING LEASES—CONSTRUCTION.

In an iron mining lease for a term of 50 years the lessee covenanted "to work the mine or mines now or hereafter discovered on said land in a good workmanlike manner during the existence of this license," and to pay the lessor a royalty of 25 cents per ton on all iron ore mined. It further agreed to pay a ground rent of $18,750 per year after the first year during the continuance of the lease, with provisos that if the royalty paid in any year should equal or exceed the ground rent for that year it should be in lieu of the ground rent, and if less the lessee should pay the difference, and that all sums paid as ground rent in any year should be credited on the royalty, which might be in excess of said ground rent in any succeeding year or years. By a further provision the lessor was authorized to declare a forfeiture of the lease in case the lessee should "fail to work such mine or mines in a good, workmanlike manner, or fail to pay the ground rent or royalty" when due. *Held* that, taking its provisions together, the lease did not require the lessee to operate the mine continuously during the term, but that the provision for ground rent was an agreed substitute for actual and continuous operation, and that it was not subject to forfeiture for failure to so operate it, so long as the ground rent was paid in accordance with its terms.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 189; Dec. Dig. ⟨⟩68(2).]

4. MINES AND MINERALS ⟨⟩68(1)—MINING LEASES—PRACTICAL CONSTRUCTION BY PARTIES.

The lessee not having done any mining on the land, except for exploration purposes, during the two years following the execution of the lease, the payment and acceptance without objection of the ground rent during such time amounted to a practical construction of the lease by the parties as not requiring continuous mining operations.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 188, 191; Dec. Dig. ⟨⟩68(1).]

Appeal from the District Court of the United States for the District of Minnesota; Wilbur F. Booth, Judge.

Suit in equity by the Niles Land Company against the Chemung Iron Company and the Oliver Iron Mining Company. Decree for defendants, and complainant appeals. Affirmed.

John C. Weadock, of Detroit, Mich. (Stearns & Hunter, of Duluth, Minn., Nelson Sharpe, of West Branch, Mich., and Leo N. Sharpe, of Philadelphia, Pa., on the brief), for appellant.

Wm. W. Billson and A. L. Agatin, both of Duluth, Minn., for appellee Chemung Iron Co.

Frank B. Kellogg, C. A. Severance, and Robert E. Olds, all of St. Paul, Minn., and Frank D. Adams, of Duluth, Minn., for appellee Oliver Iron Mining Co.

Before HOOK and ADAMS, Circuit Judges, and REED, District Judge.

ADAMS, Circuit Judge. This was a bill brought by the Niles Land Company, the appellant, against the Chemung Iron Company and the

Oliver Iron Mining Company, the appellees, to enforce forfeiture of a lease made by it on May 1, 1902, to the Chemung Iron Company, and by the latter subsequently assigned to the Oliver Company, demising to the Chemung Company the W. ½ of the N. E. ¼ and N. W. ¼ of the S. E. ¼ of section 27, township 58 N., range 20 W., situated in the county of St. Louis and state of Minnesota, for the term of 50 years, and to secure a cancellation of the lease, on the ground that the defendants failed to keep and perform one of the covenants of the lease, as a consequence of which the right of forfeiture accrued.

The lease was in the usual form of iron mining leases, containing, among others, these covenants:

(1) "In consideration of this license, the party of the second part [the lessee] hereby agrees to work the mine or mines now or hereafter discovered on said lands in a good workmanlike manner, during the existence of this license, and also hereby agrees to pay to said party of the first part a royalty on all iron ore mined or removed from said land of twenty-five (25) cents per gross ton while this license is in force. Said royalty shall be due and payable on the twentieth (20th) days of April, July, October, and January of each year during the time this license is in force for all the ore mined and removed from said land during the three months preceding the first day of the month in which payment is to be made as aforesaid."

(2) "The party of the second part, having heretofore explored said lands, now represents that iron ore exists therein, and in consideration of this license hereby agrees to pay said party of the first part a ground rent for the year ending May 1, 1903, of $12,500, after May 1, 1903, the sum of $18,750 per annum while this license is in force and not surrendered whether iron ore exists in paying quantities in said lands or not."

(3) "Said ground rent shall be paid semiannually on the twentieth days of July and January of each year: Provided, that if the royalty paid in any year to the said party of the first part shall be equal to or exceed the sum of said ground rent, then said royalty shall be in lieu of said ground rent, and should the royalty paid in any year be less than said ground rent said party of the second part agrees to pay such further amounts as ground rent as will, with such royalty paid, amount to said ground rent. All sums paid as ground rent in any year shall be credited on the royalty which may be in excess of said ground rent in any succeeding year or years."

(4) "Said party of the second part shall also, on or before the twentieth day of each month in each year this license is in force, furnish a written statement to the party of the first part of the entire quantity of iron ore or other minerals removed from said premises during the preceding calendar month as near as the same can be ascertained. * * *"

(5) "The party of the second part shall pay all taxes and assessments, ordinary and extraordinary, general and specific, which may be assessed on said lands and on the iron ore and other minerals mined thereon while this license is in force."

(6) "The said party of the second part may surrender this license any time by giving fifteen days' notice in writing to said party of the first part, and by executing, acknowledging and recording a surrender of such license in the register of deeds of said county of St. Louis, and by paying up in full all royalty, rent, taxes or assessments that may then have accrued according to the terms hereof."

(7) "In case said party of the second part shall fail to make monthly reports of the ore removed, or shall knowingly make false reports of the quantity, kind, grade, of the iron ore removed from said lands, or fail to work such mine or mines in a good workmanlike manner or fail to pay the ground rent or royalty to said party of the first part when due as aforesaid, without demand from said party of the first part, then, in either of such cases, the party

of the first part may declare this license forfeited, null and void, by giving written notice to the party of the second part."

Plaintiff averred in its bill that under the lease the express obligation was imposed on the defendants, and each of them, to work the mine or mines of ore then existing and those thereafter to be discovered within a reasonable time after the making of the writing, and to continue to do so during the term of lease as long as iron ore could be found, and that on failure of the defendants to so work the mine the lease was forfeitable at the instance of the plaintiff. And it averred that the defendants have not worked the mine or removed ore from the leased premises, except for explorative purposes, and have not paid to the plaintiff any sums of money, except the semiannual ground rent pursuant to the terms of the lease. And it further averred that the defendants thereby have so failed to work the mine that a right of forfeiture of the lease accrued to the plaintiff prior to January 20, 1912, and that on that date it gave due notice to defendants that it had exercised that right and had forfeited the lease, and now prays that the lease be declared forfeited, null and void, and for certain alternative relief.

The trial court, after a full hearing of the case, dismissed the bill on the merits, and plaintiff appealed, assigning for error that the court erred in not holding that plaintiff was entitled to the relief prayed for, and entering a final decree dismissing the bill. There are other assignments of error, calling in question the ruling of the court on the admissibility of evidence, which in the view we take of the main question, depending upon the construction of the covenants of the lease, become unnecessary to consider.

The facts of the case, so far as necessary for its determination, are practically admitted in the pleadings. The lease was made containing the covenants already referred to. The mine was not worked, except for exploration purposes, for the period of 10 years prior to the declaration of forfeiture by plaintiff in 1912. The amount reserved for ground rent, namely, $12,500 for the first year and $18,750 for each of the subsequent years, was regularly paid by one or both of these defendants to the Niles Company as and when required by the covenants of the lease. Nothing was paid for royalty as such, except in so far as it may be deemed paid by the payment of the ground rent. All taxes on the land accruing during these years were regularly paid, as required by the covenants of the lease, by one or both of these defendants. The several payments of ground rent were received by the plaintiff with full knowledge of all the facts and without objection or complaint by plaintiff. The case hinges upon the true meaning of this covenant found in clause 1 of the lease:

"The party of the second part [the lessee] hereby agrees to work the mine or mines now or hereafter discovered on said lands in a good workmanlike manner during the existence of this license."

The question is: Does this clause, taken in connection with all the other provisions of the lease, require continuous mining operation by the lessee at the peril of forfeiture provided for by clause 7 of the lease?

[1, 2] There are two generally accepted rules of construction which may aid us in answering this question: (1) Covenants of a lease are most strongly construed against the lessor, and if there be doubt and uncertainty as to the meaning of any such covenants, they are construed most strongly in favor of the lessee. (2) Forfeitures of leases are not favored in law or equity, and will not be enforced unless the right thereto is clear and conclusive.

[3] Do the provisions of the lease reserve to the lessor a clear and conclusive right to forfeit the lease for failure to conduct continuous mining operation on the leased premises? Appellant contends that clause 1 of the lease, which reads:

"The party of the second part [the lessee] hereby agrees to work the mine or mines now or hereafter discovered on said lands in a good workmanlike manner during the existence of this license"

—plainly and clearly obligated the lessee to operate the mine continuously during the existence of the lease, and that clause 7 conferred upon the lessee the right of forfeiture of the lessee's rights for failure to do so. Does this clause, taken by itself, mean that the lessee is to work the mine "in a good workmanlike manner" whenever or wherever he works it, as contended by counsel for appellees, or does it mean that the lessee agreed to continuously work the mine during the existence of the lease, and that, too, in a good workmanlike manner, as contended by counsel for appellant? In other words, does the clause relate to the manner of doing the work or to the quantum of work to be done? Is the stress of the covenant to be placed on the words "good workmanlike manner" or upon the words "during the existence of this license"?

The answer to this question, if uncertain in itself, is materially aided by its context and by other related provisions of the lease, which must all be taken into consideration in placing the true construction upon it. Immediately following the clause just cited are found provisions for the payment by the lessee of a royalty of 25 cents per gross ton on all ore mined on the premises. Then follows an agreement on the part of the lessee to pay to the lessor a ground rent of $12,500 per year for the first year of the term and $18,750 per year for the balance of the term of the lease. Then follows, in clause 7, this covenant:

"In case the said party of the second part shall * * * fail to work such mine or mines in a good workmanlike manner, or fail to pay the ground rent or royalty to said party of the first part when due, * * * the party of the first part may declare this lease forfeited, null and void. * * *"

Appellant argues that the continuous operation of the mine was a requirement to secure to the lessor the payment of royalties which were to measure the rent reserved as consideration for the lease. If payment of royalties were the only provision for payment of rent, this argument would be very persuasive: unless the mine should be operated, no ore would be produced, and, of course, no royalty would be payable. But it is not true that the payment of royalties was the only consideration. A very substantial amount is agreed to be paid in any event by the lessee—$18,750 per year, whether the mine be worked or not, and if worked so as to produce royalties such royalties were to be

credited on the ground rent obligation, and if the royalties were equal to or in excess of the ground rent the same were to be in lieu of all ground rent.

These provisions, taken together fairly disclose the intention of the parties to the lease to have been that the payment of the ground rent absolutely and in all events was the substantial consideration for the lease. If it be true that the lease could be canceled and the lessee's rights forfeited merely for failure to work the mine, it would seem so unreasonable as not to have been within the fair contemplation of the parties that the lessee should be required to make the large annual payments of ground rent, whether iron ore existed in paying quantities or not. This would subject the lessee to the possibility of losing the mine at any time, and to a continuing liability to pay $18,750 a year for the period of 50 years.

In our opinion, these clauses, when taken together, disclose a clear intention to commute the minimum uncertain output of the mine and the royalties to result therefrom to a certain and definite sum designated "ground rent." In other words, the provision for ground rent is an agreed substitute for actual and continuous operation. We think this is made more clear when we consider that in clause 7 of the lease, providing for the forfeiture, no reference is made to continuous operation or mining as an obligation resting on the lessees which might avoid forfeiture. It is there provided that if the lessee shall "fail to work the mines in a good workmanlike manner," or "fail to pay the ground rent or royalties," etc., the lessor may declare a forfeiture.

In this important clause, containing the lessor's remedy for failure of performance by lessee, the obligation "to work the mine in a good workmanlike manner" alone is mentioned as the only ground for invoking the remedy of forfeiture; and so it appears that, whatever view might be taken of the provisions of the other clauses of the lease when the parties contemplated the severe and ruinous remedy of forfeiture, it did not seem reasonable to subject the lease to total forfeiture for failure to continuously operate the mines. Other provisions afforded satisfactory assurance for the performance of that obligation.

[4] Again, it appears that the parties by the continuous course of dealing for 10 years or more, with full knowledge of all the facts and circumstances, treated the lease as not obligating the lessee to continuous mining operations. This, in our opinion, amounts to a practical construction of the covenant in question, in harmony with the contention of the appellees, and this, in cases of doubt, is and should be of controlling importance.

The decree below was right and is affirmed.