## No. 13,073.

### SPAULDING ET AL. *v.* PORTER.
(31 P. [2d] 711)

Decided March 19, 1934.

Mr. M. W. Spaulding, Mr. E. P. O'Leary, for plaintiffs in error.

Mr. Harold M. Webster, Mr. C. Clyde Barker, Mr. Stoton R. Stephenson, for defendant in error.

*En Banc.*

Mr. Justice Bouck delivered the opinion of the court.

Spaulding and O'Leary were defendants in the district court of Morgan county, the action being brought by Mary A. Porter on two causes of action, namely, one for rescission and cancellation of an oil and gas lease (on the ground of fraudulent representations alleged to have been made to her parents, Joseph and Phoebe A. Richie, her predecessors in title, who granted the lease to the defendants), and the other to quiet the title alleged to have been clouded by the same lease, which Mrs. Porter says is invalid and void. A demurrer to the first cause of action was sustained, and judgment thereon went in favor of the defendants. This being a suit in equity, the trial on the second cause of action was to the court; findings and judgment were for the plaintiff; and the defendants are here asking for a reversal.

Before discussing the merits, which we purpose doing

in subdivision 5 below, where the lease here involved is quoted, we shall dispose of certain alleged errors assigned as to various rulings of the lower court in relation to pleading and practice.

1. It is said there was error in denying the defendants' motion for a change of venue from Morgan county to the City and County of Denver. The ground alleged in the motion was that the defendants had been served—not in Morgan county, where the case was instituted—but in Denver. Possibly that ground was good in so far as it related to the first cause of action. Be that as it may, however, this cause of action was eliminated from the case when the demurrer interposed to it was sustained. Any errors committed during the trial in regard to the first cause of action were thereby rendered immaterial, irrelevant, and presumably harmless. The second cause of action, on the other hand, was, according to the plaintiff's contention, for the determination of an interest in real property. If the contention is correct, as we think it is, the case was properly triable in Morgan county, where the land is admittedly situated. Code, 1921, §25 (Courtright's M. A. C. 1933, §25); *Allen v. Sterling,* 76 Colo. 122, 230 Pac. 113; *Campbell v. Equitable Securities Company,* 12 Colo. App. 544, 56 Pac. 88. There was no prejudicial error in this particular.

2. The defendants complain of the court's denial, in whole or in part, of their motion to strike parts of the complaint and their motion to make the complaint more specific. These motions belong to the class addressed to the sound judgment of a trial court, whose discretion must govern unless there is proof of its abuse. By answering the amended complaint after the court's adverse rulings, the defendants have here waived any error in the latter. *Aetna Co. v. North Sterling Dist.,* 75 Colo. 185, 191, 225 Pac. 261, 263; *Louden Co. v. Neville,* 75 Colo. 536, 538, 227 Pac. 562, 563; *Dickson v. Retallic,* 80 Colo. 78, 80, 249 Pac. 2, 3. As regards the defendants' motion to require separation of allegedly different

causes of action in each of the two purported causes of action, the question thereby raised became moot in so far as it bore upon the first cause of action, because this was eliminated from the case by the trial court. To the extent that it was directed against the second cause of action, the motion is bad and was properly denied; we consider the second cause of action as but a single one, namely, to quiet title. Any additional relief asked for therein is merely that which is usually incidental to the quieting of title. It follows that there was no prejudicial error in connection with any of these motions.

█ 3. Numerous demurrers were interposed to the amended complaint, some general, some special. The objections presented by these demurrers, except the de- murrer on the ground of lack of jurisdiction and the demurrer for insufficiency of facts, were waived when the defendants answered over. *Elliott v. Field,* 21 Colo. 378, 41 Pac. 504. The legal questions submitted by the above excepted demurrers need not be discussed apart from the discussion of the merits of the case later on.

█ 4. It is earnestly argued that the defendants' motion for judgment on the pleadings and a motion to strike the replication from the files were erroneously denied. Defendants served upon plaintiff's counsel a notice of the filing of the answer. Technically, such notice had the effect of limiting to ten days after service the time for filing a replication. Code 1921, §66 (Courtright's M. A. C. 1933, §66). Thereafter the defendants had a right to ask the clerk of the court to enter a default. They did not do so. Instead, they filed their motion for judgment on the pleadings with a request therein that a default be entered, which request came before the court only at the time the motion was heard. Before the motion was brought on for hearing, the plaintiff had filed her replication. It was the clerk's duty to accept the replication for filing, as he did, there being as yet no entry of default. In due time the motion was argued, the defendants insisting that, on account of the absence

of a replication at the time they filed their motion, they had an absolute right to charge the plaintiff with implied admission of the truth of all new matter in the answer under Code 1921, §77 (Courtright's M. A. C., 1933, §77). The court denied the motion. There was no error in the action so taken. Even if the defendants had requested the clerk to enter a default, and if the clerk had entered it, the default could have been either set aside or allowed to stand, at the discretion of the court, which always has the power to grant additional time for filing a pleading when nobody is shown to be prejudiced thereby. *Mitchell v. Knott*, 43 Colo. 135, 137, 95 Pac. 335, 336; *Metallic Mining Co. v. Watson*, 51 Colo. 278, 286, 117 Pac. 609, 611. Compare *Woods v. Chellew*, 15 Colo. App. 368, 62 Pac. 230. Refusing to enter judgment on the pleadings was the practical equivalent of extending the time for filing the replication and no prejudice is apparent in so doing. A litigant has no vested right to profit by a mere technicality. The case of *Ferrara v. Auric Mining Co.*, 43 Colo. 496, 95 Pac. 952, cited by defendants, is not authority to the contrary. In that case the plaintiff had failed to file a replication and the lower court exercised its judicial discretion by holding the plaintiff to the consequences of her omission. Pleadings, like rules of practice and procedure, must be used as servants of justice and not be permitted to become unjust or tyrannical masters. An additional reason exists for upholding the action of the court in declining to penalize the plaintiff for not filing her replication sooner; there was in the answer no new matter calling for contradiction or avoidance. The seemingly affirmative allegations of the defendants, other than legal conclusions and purely evidentiary assertions, merely amount to a denial of what was set forth in the complaint. In fact, the plaintiff did not employ the time-honored short form of complaint for a suit to quiet title, but anticipated the defense by setting out the defendants' claim of right or title at considerable length. The better practice is the other way. *Mitchell*

*v. Titus*, 33 Colo. 385, 386, 80 Pac. 1042. Compare *Brooks v. Bates*, 7 Colo. 576, 4 Pac. 1069. Logically, the reasons above stated as justifying the lower court's denial of the motion for judgment on the pleadings are equally conclusive that the motion to strike the replication from the files was also properly denied.

5. The foregoing discussion deals with matters of pleading and practice. Now for the real merits.

Upon the oil and gas lease mentioned at the beginning must rest whatever rights or defenses the defendants may have in this case. The material parts of the lease are as follows:

"Oil and Gas Lease.

"This agreement, Made * * * this 30th day of October, A. D. 1924, by and between Joseph Richie and Phoebe A. Richie, husband and wife, of Fort Morgan, Colorado, hereinafter called the Lessor * * *, and M. W. Spaulding and E. P. O'Leary, of Denver, Colorado, hereinafter called the Lessee, Witnesseth:

"That the said lessor for and in consideration of Two Dollars, cash in hand paid, the receipt and sufficiency whereof is hereby acknowledged, and the covenants and agreements hereinafter contained, on the part of the lessee to be paid, kept and performed, have granted, demised, leased and let, and by these presents do grant [etc.] unto the said lessee, for the sole and only purpose of mining and operating for oil and gas, and laying pipe lines, building tanks, power stations and structures thereon to produce, save and take care of, said products, all that certain tract of land situate in the County of Morgan, State of Colorado, described as follows, to-wit: E½ Section 4, Township 2, Range 57, and containing 320 acres more or less * * *.

"It is agreed that this lease shall remain in force for a term of eighteen months from this date, and as long thereafter as oil, gas, or either of them is produced from said land by the lessee.

"In consideration of the premises the said lessee covenants and agrees:

"1. To deliver to the credit of the lessor, free of cost, in the pipeline to which the lessees may connect their wells, the equal one-eighth part of all oil produced and saved from the leased premises, as royalty, or, at lessor's option pay the lessor for such royalty the market price prevailing * * *.

"2. To pay the lessor 100/00 Dollars each year in advance for the gas from each well where gas only is found while the same is commercially used off the premises.

"The said lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling house on said land during the same time, such gas to be delivered to lessor at their own risk and expense.

"If no well be commenced on said land on or before the 5th day of November, 1925, this lease shall terminate as to both parties, unless the lessee, on or before that date, shall pay or tender the sum of Two Dollars in cashier's draft or money to the lessor personally or his heirs or assigns to the address by registered mail specified in this lease as the address of the lessor which shall operate as a rental for said land and cover the privileges of deferring the commencement of a well for twelve months from said date. In like manner, and upon like payments and acceptance thereof or tenders, the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited above, the down payment, covers not only the privileges granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred. It is further understood and agreed that failure on the part of the lessee to drill said structure, or any part thereof, for oil shall in no manner render said lessee

liable for any damages to said lessor, his heirs or assigns.

"Should the first well drilled on the above described land be a dry hole, then and in that event if a second well is not commenced on said land within twelve months from the expiration of the last rental period for which rental has been paid, this lease shall terminate as to both parties, unless the lessee, on or before the expiration of said twelve months, shall resume the payment of rentals in the same amount and in the same manner as hereinbefore provided. And it is agreed that upon the resumption of the payment of rentals, as above provided, that the last preceding paragraph hereof, governing the payment of rentals and the effect thereof, shall continue in force just as though there had been no interruption in the rental payments. * * *.

"Lessor hereby warrants and agrees to defend the title to the lands herein described, and agrees that the lessee shall have the right at any time to redeem for lessor any mortgages, taxes or other liens on the above described lands, in the event of default of payment by lessor, and be subrogated to the rights of the holder thereof, or to the rights of the lessor, his heirs and assigns.

"Each and every grant, promise and covenant herein made by either party hereto is and shall be a grant, promise and covenant of the heirs, administrators, executors, successors and assigns of such party, and any right, privilege or property herein granted to either of the parties hereto shall be a right, privilege and property of the heirs, executors, administrators, successors and assigns of such party. * * *

"The lessees as evidence of their good faith and bona fide intentions to fully test the said structure for oil and gas, will within twelve months from the date of this lease begin drilling operation upon said structure; will within fifteen months from the date of this lease drill upon said *structure* to a depth of five hundred feet unless oil or gas

shall have been found at a lesser depth; and within eighteen months from the date of this lease the lessees will drill upon the said structure to a depth of two thousand feet unless oil or gas shall have been found at a lesser depth. The lessees in the exercise of good faith will diligently drill said oil well as far below a depth of two thousand feet as the log of said well indicates as practicable in order to thoroughly test the said structure for oil and gas.''

It will not be necessary to enter deeply upon a consideration of the general principles underlying oil and gas law, or to apply or distinguish the numerous decisions of other jurisdictions in that field. The vital issue for us to decide is whether, under the facts and circumstances shown by the record herein, the instrument quoted is and must remain a lease perpetually renewable at the arbitrary option of the defendants by the annual payment of the sum of $2, even though nothing be ever actually done or attempted by the defendants to develop oil or gas on the tract under lease. The record discloses no such work, or attempt to work, on the demised premises at any time between the execution of the lease in October of 1924 and the opening of the trial below in February, 1931, a period of over six years, and the briefs admit that nothing had been done or attempted thereafter. It is equally clear that the defendants intended to, and by the deliberate wording of the lease did, create the expectation and belief in the minds of the lessors that the lessees would commence actual exploration with diligence. On its face, the lease contemplated commencing a well on the demised premises within the first twelve months, and purported to run for a term of eighteen months ''and as long thereafter as oil, gas, or either of them is produced from said land'' by the defendants. There is no claim that a substantial consideration was given for the lease at the outset. Exactly $2 was paid the lessors when the document was signed. It is manifest that no other consideration has since been paid except exactly

$2 in each of several years, which was paid for the purpose of keeping the lease alive from twelvemonth to twelvemonth. No express obligations, except those suspendable under the "unless" clause, ostensibly without limitation of time or of the number of suspensions, were assumed by the defendants save as the final paragraph of the lease might constitute such. Of the things which in the latter the defendants said they would do "as evidence of their good faith and bona fide intentions to fully test the structure for oil and gas," not a single one has been done. This final paragraph is wholly apart from the "unless" clause, and has to do with exploration of the *structure* surrounding the land demised. It embodies affirmative obligations and is in no sense conditional. It is the last thing spoken by the defendants in an instrument which admittedly was composed and prepared by them in its entirety. By reason of the form, position and origin of the paragraph, the reasons for interpreting it most strongly against its authors are specially cogent. It may well be that we ought to regard the continued nonperformance of the earlier provisions and covenants, which appear above the final "structure" covenant, as in and of itself proper ground for forfeiture. In that event we might well hold that under the uncontradicted evidence a forfeiture or termination of the lease was accomplished by the plaintiff. It is not at all certain that at the end of the first eighteen months, under the facts and circumstances here in evidence, the instrument was more than a mere option. There would seem to be neither justice nor equity in the claim that the lease is rendered irrevocable simply by paying annually a paltry $2. In our opinion, whatever may be our individual views on the latter proposition, the lease must be deemed effectually terminated by the plaintiff. We cannot lose sight of the fundamental idea of diligence that is read into many oil and gas leases as an implied condition of bona fide tenure in this field, so utterly different from the field of the ordinary landlord and tenant; particularly where,

as here, the subject of actual and definite commencement of operations is dealt with as one of paramount concern. In the case at bar the plaintiff, after becoming the owner of the land, promptly declined to receive a $2 payment tendered, and made unequivocal attempts to revoke the option (if such it became) or to terminate the lease. Those attempts we consider entitled to be effectuated by this court, as a tribunal that must take the facts which are proved and conceded and then mete out the equitable relief or remedies suggested thereby, stripped of all technicalities.

If it be said that we press the limit of our equitable jurisdiction when we announce the foregoing views, our answer is that we are strictly within the real spirit of equity. There is no plain, speedy or adequate remedy at law within the plaintiff's reach. Into the lease the defendants have injected a covenant rendering them immune from any action for damages. An action for the recovery of the land or the possession thereof will not lie, for the plaintiff herself is in actual possession and the defendants have never been. Thus this suit to quiet title appears to have been the only appropriate procedure. The plaintiff has proved her own title. The defendants are virtually, though not in technical form, seeking specific performance here of their alleged contract, since they defend by setting up and standing upon their alleged contractual rights. Without relying upon these they would not now be in court. Perhaps we ought to look through the form at the substance, and decide this case as if it were actually one for specific performance of the alleged contract. It is possible that we ought to consider squarely the question whether the contract as interpreted and as insisted upon by the defendants is unconscionable and contrary to public policy. But we need not resort to this extreme. That we are steering a middle course not wholly untraveled is disclosed by such cases as that of *People's Gas Co. v. Dean,* 193 Fed. 938, decided by the United States Circuit Court of Appeals of our own

federal circuit, where we find a clear and well reasoned opinion by Judge Riner. The case of *Davis v. Riddle,* 25 Colo. App. 162, 136 Pac. 551, also deserves reading in this connection.

We add, as a matter of incidental interest, that there are before us herein a record of 962 folios and an abstract of the record aggregating 300 printed pages. Stated in dollars and cents, the costs taxable on this account against the defendant in error, if our conclusion were in favor of reversal, would amount to over $500, or the equivalent of "renewal rentals" sufficient to continue the defendants and their successors as idle lessees for more than 250 years.

6. What has been said is on the assumption that the plaintiff has actually and legally become the owner of the leased premises. The plaintiff's right to sue as such owner is challenged, however, on the alleged ground that, since she claims title by conveyance from a surviving joint tenant, the admitted failure to prove the death of her father (the deceased joint tenant) by affidavit in the particular manner provided for in chapter 136, S. L. 1923, pages 399 and 400, destroys her claim. Counsel say that the lower court erred in permitting the plaintiff to prove her father's death by her own direct testimony at the trial. It is thus obvious that the defendants interpret said chapter 136 as establishing a mandatory and exclusive method of proving death in joint tenancy. On the contrary, as we read it, the statute offers a mere alternative method which may, but need not, be adopted. In answer to the argument that our lawmakers did not aim merely to authorize the kind of proof described in the 1923 statute, but intended to inhibit the customary sworn evidence which, because it can be subjected to the surer test of cross-examination, is the more reliable sort, it is sufficient to say that they did not express the intention so to inhibit. The plaintiff's testimony as to her father's death was properly received.

7. Several other questions raised by the

record will be referred to. Counsel assigns error as to the alleged insufficiency of certain tenders. They have to do with two small sums of money, neither of which exceeded $10. In the state of the record, one of these tenders is not involved at all. The other is one that was claimed by the plaintiff to have been made to the defendants in connection with her demand for cancellation. There is no necessity of going into the detailed evidence. We need not decide whether the latter tender was sufficient. The question is not material. In the first place, the evidence shows that the defendants would not have accepted any tender whatsoever, but insisted at all times upon their alleged right to continue the lease in force. The law does not require one to do a vain and useless thing. Secondly, with the first cause of action out of the case, the question of proper tender is eliminated, as must necessarily be inferred from our consideration of the main issue above. Under our view, the defendants are not entitled to recover any of the $2 payments they made, for they expected to and did pay those for the extensions actually received. The other errors assigned do not require mention.

Our conclusion is that there is no prejudicial error in the record. The findings of the district court are amply supported by the evidence. The judgment terminating and canceling the lease, and quieting title in the plaintiff, is right and it must therefore be affirmed.

Judgment affirmed.