Argued and submitted January 18, affirmed April 12,
reconsideration denied June 2,
petition for review denied July 27, 1982 (293 Or 394)

BENNETT et al,
*Respondents,*
*v.*
HEBENER et ux,
*Appellants.*

(No. 7978, CA A21690)

643 P2d 393

Bradley D. Fancher, Bend, argued the cause for appellants. With him on the briefs were Brian J. Mac-Ritchie and Gray, Fancher, Holmes & Hurley, Bend.

Forrest E. Cooper, Lakeview, argued the cause and filed the brief for respondents.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

## THORNTON, J.

This is an action to terminate a mineral lease between plaintiffs-lessors and defendants-lessees. Defendants appeal from a decree extinguishing their rights under the lease. We affirm.

Plaintiffs' parents entered into the lease with defendant Robert Hebener and his business partner, Elmer Jenkins, in 1958. The lease concerned a gravel pit and gravel stockpile located about 5 miles north of Burns. The lease for removal of gravel from the pit was for 30 years with an option in lessees to renew for an additional 30 years. Lessees were to pay lessors rental "of 5 ∎ per cubic yard of gravel mined upon the premises." Lessors were given the right to declare the lease "null and void if any year period shall elapse without payment by the lessees of a minimum of $100.00 per year." The lessees also agreed "not to commit any waste or destruction on the premises other than what might be absolutely necessary to their gravel and stock pile operation." Finally, the lease provided:

"10. In the event the Lessees, their administrators, executors, heirs or assigns should violate any of the terms or covenants of this lease, the Lessors shall have the right to enter upon the premises and repossess themselves of their former estate and expel the Lessees therefrom and said right shall not prejudice their right to sure [sic] for any delinquent rental."

Plaintiffs' parents, Mr. and Mrs. Cowing, owners of the 160-acre parcel where the gravel pit is located, held the property until Mr. Cowing's death in 1970. Mrs. Cowing deeded the property to plaintiffs in 1978. Mr. Hebener obtained Mr. Jenkins's interest in the lease in 1969, after Mr. Jenkins petitioned for dissolution of their partnership.

During the 23 years before this action, substantial extraction of gravel was intermittent and at times resulted in litigation. *See, e.g., Babler Bros., Inc. v. Hebener,* 267 Or 414, 517 P2d 653 (1974). According to defendants' records, during 15 of the 23 years only the $100 yearly minimum rental was paid. After the mid-1960s, defendants had no equipment on the leased premises to crush rock and did not operate a truck to haul crushed rock after 1974. Jenkins petitioned to dissolve the partnership in 1968 on the

grounds that Hebener had not accounted for proceeds of some sales and that the parties had had numerous disputes over the operation. In 1979, total royalties for the rock removed amounted to 15 cents. The last substantial royalty payment to plaintiffs was the result of an agreement with Harney Rock and Paving Company in December, 1979, for Harney Rock to conduct its own operation on the premises and to remove the gravel needed. In a letter to Harney Rock, Hebener described the agreement as a desperation maneuver made to pay off a mortgage foreclosure. During 1980, continual disputes arose between Hebener and Harney Rock and at the time of trial in the present action liens on the project had been filed by Hebener. Mr. Hooker, from Harney Rock, testified that as a result of his dealings with Hebener, he would not want to negotiate any more contracts with Mr. Hebener. Defendants made no other sales in 1980 and, at time of trial, had gross sales in 1981 requiring them to pay plaintiffs less than $20 in royalties. In short, as Hebener admitted, the lease had not been a financial success.

Plaintiffs filed the present suit in March, 1981, to terminate the lease. Plaintiffs alleged that defendants had failed to pursue the gravel lease in an economically reasonable manner and that defendants had committed waste on the premises by erecting a three-foot high barrier over an access road. Defendants answered generally, denying the allegations. At trial, evidence concerning the lease and Hebener's business transactions was admitted. Evidence was also admitted detailing a strong market demand for the particular rock found at the gravel pit. The unavailability of rock from the gravel pit had led to development and use of alternative sites in the area.

The trial court found that defendants had failed and refused to develop the rock quarry to the extent that a reasonable person would have and that defendants have no present financial ability to proceed with any development. The court also found that defendants destroyed a portion of a road on the premises, thereby blocking plaintiffs' access, and that this was in violation of the lease agreement not to commit any waste or destruction on the premises. Pursuant to Section 10 of the lease, the court granted plaintiffs the

right to repossess the gravel pit to the exclusion of defendants and ordered defendants' interests terminated.

On appeal, defendants contend that the trial court erred in finding an implied agreement to develop the gravel pit and in the finding that defendants committed waste. Defendants also assert that they were entitled to notice of plaintiffs' intent to terminate the lease.

In *Fremont Lbr. Co. v. Starrell Pet. Co.*, 228 Or 180, 364 P2d 773 (1961), the defendant leased the plaintiff's land to develop the oil, gas and minerals. The principal consideration for the lease was to be the royalties from minerals taken from the land. The Supreme Court held that, because of the nature of the agreement, there existed an implied promise by the lessee to "proceed with reasonable diligence to obtain production." 228 Or at 199. *See also Bussard v. Binder,* 277 Or 21, 23, 558 P2d 845 (1977); *Yeadon v. Graham,* 273 Or 234, 236, 540 P2d 1007 (1975).

■ ■ In the present case, consideration for the lease was the five-cent per cubic yard royalty. Although there was no express provision requiring defendants to remove gravel from the pit, defendants as lessees impliedly agreed to proceed diligently. *Fremont Lbr. Co. v. Starrell Pet. Co., supra.* Hebener's conduct over the 23 years that he operated under the lease does not evidence reasonable diligence. Defendants removed less than the $100 minimum royalty volume in 15 of the 23 years. Hebener's litigious character and his financial difficulties resulted in a substantial loss of business. At the time of trial, the prospects for defendants to begin operations on the premises were minimal at best. The lack of busines activity under the lease did not result from adverse market conditions for the gravel or from unavoidable delay. *See Yeadon v. Graham, supra.* The trial court properly found defendants in violation of their implied agreement to proceed under the lease.

■ Defendants also argue that the court erred in terminating the lease when the evidence showed they had not been served notice of intent to terminate or notice of default. Defendants do not cite any notice requirement under the lease, but, instead, assert that case law

demonstrates the need for such notice.[1] A similar argument was made and rejected in *Fremont Lbr. Co. v. Starrell Pet. Co., supra,* where the plaintiff gave no notice to the defendant of its intent to terminate the oil, gas and mineral lease at the end of five years. The lease stated that it was for a term of five years "and as long thereafter as oil, gas or other mineral is provided from said land." The defendant delayed any operations under the lease until a few days before the end of the initial five-year period. The court rejected the defendant's argument that a 60-day notice of default for breach-of-covenants provision in the lease required the plaintiff to give notice to defendant. The court held that the defendant's failure to pursue operations with due diligence, which was an implied condition of the lease's continued existence, resulted in automatic termination of the lease:

> "We are impressed with the wisdom behind the theory of automatic termination as expressed in *Richfield Oil Corp. v. Bloomfield,* [103 Cal App 2d 589, 229 P2d 838 (1951)], at 840:
>
>> " 'It should be observed that this rule of automatic termination is correct not only as a matter of proper and reasonable interpretation of the lease agreements but is based on sound considerations of policy as well. The duty to drill and explore the property, where no substantial cash consideration is involved, should be treated not as a mere covenant but as a condition to the lease's continued existence for the reason that practically the entire consideration depends on the undertaking. Certainly, the lessee should not be assisted and encouraged to hold the lease for speculative purposes only without making any attempt to develop the property's possible resources. * * *.' " 228 Or at 190.

Other jurisdictions have likewise found that the duty of a lessee diligently to pursue a mining lease is a condition to the continuance of the lease. In *Russell v. Johns Manville Co.,* 20 Cal App 3d 405, 97 Cal Rptr 634, 98 Cal Rptr 181 (1971), the lessees in a mineral lease argued that the implied agreement to engage in mining activities with reasonable diligence was not a condition and that they

---

[1] Defendants cite ORS 91.050-.110 generally as support for their notice argument. No statutory notice requirement was argued at trial, and it will not be considered for the first time on appeal. *See, e.g., Maker v. Wellin,* 214 Or 332, 339, 327 P2d 793, 329 P2d 1114 (1958).10

should not forfeit their leasehold interest because they were never served with a notice of default. In rejecting the lessees' notice argument, the court stated:

"Appellants' contention, that the implied agreement that the lessee of a mining lease will commence mining activities with reasonable promptness and pursue such activities with reasonable diligence is not a condition, is not the law of this state nor is it the law followed in other jurisdictions. On the contrary, such a rule would contravene the basic principle that because mining leases are made in the expectation of operation and profits, lessees cannot hold them for speculation and maintain a 'do nothing' policy. * * *" 20 Cal App 3d at 412.

*Accord, Smith v. Housley Mining Company,* 188 Ark 1083, 69 SW 2d 865 (1934); *Annot.,* 76 ALR2d 721, 739 (1961).

■     In both *Fremont Lbr. Co. v. Starrell Pet. Co., supra,* and *Russell v. Johns Manville Co., supra,* despite express provisions in the leases requiring advance notice of declared breaches, the lessees' interest was terminated for lack of due diligence, even though no notice was given. We see no reason to apply a different standard here, where the lease contains no provision requiring lessor to give notice and provides under section 10 that for the violation of the terms or covenants of the lease, lessors shall have the right to repossess the premises and expel lessees. We do not find the forfeiture of lessee's interest, absent prior notice, to be inequitable under the facts of this case.

Because we find that the trial court properly terminated defendants' interest in the lease for lack of due diligence, we need not address defendants' other contention that no waste was committed on the premises by defendants' activities in erecting a three-foot high obstruction on the access road.

Affirmed.