408 A.2d 1377

In re ESTATE OF Marie C. TIPPINS, Deceased.

Appeal of COMMONWEALTH of Pennsylvania,
DEPARTMENT OF REVENUE.

Supreme Court of Pennsylvania.

Argued Sept. 25, 1979.

Decided Dec. 21, 1979.

John M. Duff, Deputy Atty. Gen., Pittsburgh, for appellant.

Alan H. Finegold, Marlee S. Myers, Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION

LARSEN, Justice.

This tax case involves the question of whether certain transfers made by the decedent more than two years prior to her death irrevocably divested her of all beneficial interest in various savings accounts and are, therefore, not subject to the inheritance tax.

On February 9, 1970, the decedent, Marie C. Tippins, delivered sixteen savings account passbooks to her son, George W. Tippins. Fourteen of these accounts were in the name of the decedent "in trust for" others, and the remaining two accounts were joint accounts with right of survivorship in the name of decedent and her son. The decedent, who supported herself with a substantial dividend income, was 79 years of age at the time she transferred possession of the savings passbooks and had decided that she required the

type of care which she would receive in a nursing home. As decedent gave the passbooks to her son, she stated that she had no need for the funds, and that her son should take charge of the accounts and see to it that the money was paid to the named beneficiaries at such time as they displayed a need for it.

Her son placed the passbooks in his office safe and called the respective banks, requesting instructions as to what steps he should take to transfer the accounts into his name. He was told to supply a power of attorney. He complied with this request, and the banks sent him signature cards which he completed and returned to them. From that time forward, the bank statements and correspondence pertaining to the accounts were mailed to the son at his office. However, unbeknownst to the son, these steps had not effected a change in the names or form of the accounts, but had merely added his name to them as his mother's attorney in fact.

The decedent passed away on August 19, 1973. As of that date, decedent's son had not become aware of any circumstances which would indicate a need on the part of the beneficiaries, several of whom were minors, for the monies. Consequently, no distributions had been made to the beneficiaries during decedent's lifetime, and the funds on deposit in the accounts as of February 9, 1970 (the date of the transfer of the passbooks), along with the accrued interest thereon, were intact as of the date of decedent's death.

The Commonwealth included the value of both the trust accounts and the joint accounts in its appraisement of the decedent's estate. Decedent's personal representative elected to have the correctness of this appraisement determined at the audit of his account. The auditing judge held that none of the savings accounts should be included in the appraisement, and denied the Commonwealth's claim for inheritance tax. The Commonwealth filed exceptions to the decree which were denied, and this direct appeal followed.

## THE TRUST ACCOUNTS

■ The Commonwealth seeks to treat the fourteen savings accounts held by decedent "in trust for" others as

revocable transfers within the purview of § 221(a) and § 226 of the Inheritance and Estate Tax Act, Act of June 15, 1961, P.L. 373, Art. II, §§ 221(a) and 226, 72 P.S. §§ 2485–221(a) and 2485–226, and thus subject them to the tax.[1] The Commonwealth contends that the decedent transferred the beneficial interests in the trust accounts without consideration, and that, at the time of her death, the decedent had the "power to alter, amend or revoke" the interests of the beneficiaries. We disagree with this latter contention.

"The deposit of cash in a savings account or checking account *in the name of the depositor in trust for "X"*, creates presumptively a tentative or revocable trust, but since it is incomplete there is ambiguity or doubt as to whether depositor intended a revocable trust or an irrevocable trust or absolute gift, or no trust at all, and consequently parol evidence is admissible in such cases to show what the actual intention of the depositor or donor was . . ." *Furjanick's Estate*, 375 Pa. 484, 489, 100 A.2d 85, 88 (1953) (Emphasis original).

To overcome this presumption of revocability, one must produce evidence of "clear and unambiguous language or conduct" which demonstrates an intent to create something other than a revocable trust. *Ingels' Estate*, 372 Pa. 171, 92 A.2d 881 (1952). In *McGary's Estate*, 355 Pa. 232, 49 A.2d 350 (1946), this Court held that a settlor's notifying the beneficiaries of the opening of the trust accounts, delivery of the passbooks to the beneficiaries, statements that the funds

---

1. Section 221(a) provides:

Consideration. All transfers of property, specified in sections 222–226, which are made during his lifetime by a resident or a non-resident, to the extent that they are made without valuable and adequate consideration in money or money's worth at the time of transfer, are subject to tax under this act.

Section 226 provides:

A transfer conforming to section 221(a), and under which the transferor has, at his death, either in himself alone, or in conjunction with any person not having an adverse interest, a power to alter, amend or revoke the interest of the beneficiary, is subject to tax under this act. Similarly, the relinquishment of such a power in contemplation of death, within the meaning of section 222, is a transfer subject to tax.

contained in the accounts were gifts, and failure to withdraw money for her own benefit subsequent to these acts and declarations were sufficient to manifest an intent to create irrevocable trusts. See also Restatement (Second) of Trusts, Section 58, Comment (a).

The chancellor in the instant case found *McGary's Estate* to be controlling and held that the testimony presented by the executor was sufficient to rebut the presumption of revocability. That testimony established that decedent not only relinquished possession of the passbooks, instructed her son to distribute the funds when needed, and made no withdrawals thereafter; but also, that she gave her son a power of attorney, told him she no longer had a need for the money, and did all of the foregoing at a time when she was well aware of her advancing years and her recent decision to enter a nursing home. These acts and declarations, considered in the context of decedent's circumstances, support the chancellor's finding that the decedent, by clear and unambiguous statements and conduct, demonstrated an intent to create irrevocable trusts.[2] As this finding obviates the conclusion that decedent retained a "power to alter, amend or revoke" the beneficiaries' interests, that portion of the chancellor's decree exempting the trust accounts from taxation under § 221(a) and § 226 of the Inheritance and

2. The Commonwealth, nevertheless, urges this Court to reject the chancellor's finding because, *inter alia*, no distributions were made from the accounts during decedent's lifetime, no gift tax returns were filed before decedent's death, and the interest which accrued on the funds was reported on decedent's federal income tax returns. The chancellor considered these circumstances and found them to be unpersuasive (e. g. decedent's son explained his reasons for not making distributions and, as we said in *Sayre's Estate*, 443 Pa. 548, 552, 279 A.2d 51, 53 (1971), the decedent's failure to treat the transactions properly on her federal tax returns "could be the result of her misunderstanding of the Federal tax laws"). The Commonwealth's argument thus goes only to the credibility and weight to be assigned to this testimony and, as such, it misconstrues this Court's responsibility on appeal—"[t]he test is not whether we, the appellate court, would have reached the same result had we been acting as the hearing judge who saw and heard the witness, ' "but rather whether a judicial mind, on due consideration of the evidence as a whole, could reasonably have reached the conclusion of the chancellor" '." *Masciantonio Will*, 392 Pa. 362, 367, 141 A.2d 362, 365 (1958).

Estate Tax Act should be affirmed. *McGary's Estate, supra*; *Cohen's Estate,* 445 Pa. 549, 550, 284 A.2d 754, 755 (1971).

## The Joint Accounts

The Commonwealth claims a tax is due under § 241 of the Inheritance and Estate Tax Act[3] on one-half of the value of the two accounts held jointly by decedent and her son with right of survivorship. That section taxes the right of immediate ownership or possession which inures to surviving tenants of a joint tenancy with right of survivorship upon the death of one of the joint tenants. The decedent's representative asserts that no such rights passed upon decedent's death because they were transferred by *inter vivos* gift when decedent surrendered these passbooks under the circumstances described previously. The Commonwealth contends that there was no *inter vivos* gift because, regardless of decedent's intentions, she failed to make sufficient delivery of her interest in the accounts,[4] and it therefore

3. Act of June 15, 1961, P.L. 373, Art. II, § 241, 72 P.S. § 2485-241:
   When any property is held in the names of two or more persons, or is deposited in a financial institution in the names of two or more persons, so that, upon the death of one of them, the survivor or survivors have a right to the immediate ownership or possession and enjoyment of the whole property, the accrual of such right, upon the death of one of them, shall be deemed a transfer subject to tax under this act, of a fractional portion of such property to be determined by dividing the value of the whole property by the number of joint tenants in existence immediately preceding the death of the deceased joint tenant. This section shall not apply to property and interests in property passing by right of survivorship to the survivor of husband and wife. If the co-ownership was created in contemplation of death, within the meaning of section 222 of this act, the entire interest so transferred shall be subject to tax only under section 222, as though a part of the estate of the person who created the co-ownership.

4. Unlike the trust accounts discussed *supra,* decedent could not irrevocably divest herself of her interest in the joint accounts by a mere manifestation of intent. For, it has long been the law that a gift of property not impressed with a trust requires the fact of delivery to convert the "unexecuted and revocable purpose into an executed, and therefore irrevocable, contract". *Walsh's Appeal,* 122 Pa. 177, 186, 15 A. 470 (1888).

passed by right of survivorship and is taxable under § 241. The Commonwealth's position is correct.

In *Chadrow v. Kellman,* 378 Pa. 237, 106 A.2d 594 (1954), this Court stated, "[w]e have repeatedly held that an essential component element of a valid *inter vivos* gift is that there must be evidence of an intention to make a *gift* accompanied by *delivery, actual or constructive, of a nature sufficient not only to divest the donor of all dominion over the property, but to invest the donee with complete control."* *Id.,* 378 Pa. at 242, 106 A.2d at 597 (citations omitted) (emphasis original). The efforts made by decedent's son to transfer the joint accounts into his name only were, because of a misunderstanding with the bank, ineffectual and the accounts remained joint accounts governed by the original agreement between decedent, her son, and the bank. That agreement provides in pertinent part that decedent and her son were to hold as "joint tenants with right of survivorship" and that the bank was "directed to act pursuant to any one or more of the joint tenants' signatures . . . in any manner in connection with [these] account[s]". Thus, decedent's right to withdraw the funds was not extinguished and she was not divested of "all dominion over the property". The delivery was, therefore, incomplete, and the decedent's interest in the joint accounts passed not by gift but by right of survivorship. As such, it is taxable under § 241 of the Inheritance and Estate Tax Act.

The decree of the auditing judge is, therefore, affirmed as to the trust accounts and reversed as to the joint accounts. The case is remanded to the orphans' court for proceedings consistent with this opinion. Each party is to pay his own costs.

MANDERINO, J., did not participate in the decision of this case.

ROBERTS, J., filed a concurring and dissenting opinion in which NIX, J., joined.

 

ROBERTS, Justice, concurring and dissenting.

I agree with the majority that the fourteen "in trust" savings accounts should not be included in decedent's taxable estate. I disagree with the majority, however, as to the two joint accounts. The record demonstrates sufficient delivery of these two accounts to support a valid inter vivos gift. As the orphans' court found, at the time of her transfer of the joint accounts the decedent intended the transfer to be final and complete, her son took exclusive possession of the passbooks, which he placed in his office safe, and the son, who already possessed a power of attorney from his mother, notified the bank and asked them to transfer the accounts to his name. I agree with the orphans' court that, in these circumstances, all sixteen of the accounts at issue should be excluded from decedent's taxable estate and, accordingly, I would affirm the orphans' court decree.

NIX, J., joins in this concurring and dissenting opinion.