479 A.2d 1037

James SUPP

v.

ERIE INSURANCE EXCHANGE and Liberty Mutual Insurance Company.

Appeal of LIBERTY MUTUAL INSURANCE COMPANY.

Superior Court of Pennsylvania.

Argued Nov. 30, 1983.

Filed July 6, 1984.

John Baginski, Pittsburgh, for appellant.

Colleen N. Kilbert, Pittsburgh, for Supp, appellee.

William R. Haushalter, Pittsburgh, for Erie, appellee.

Before ROWLEY, WIEAND and HESTER, JJ.

ROWLEY, Judge:

This is an appeal from a declaratory judgment entered after a court *en banc* dismissed the exceptions of the appellant, Liberty Mutual Insurance Company, to the findings and conclusions of the trial judge. We reverse.

Because a declaratory judgment action follows "as nearly as may be" the practice and procedure in an action in equity, Pa.R.C.P. No. 1601(a), we will review the determination of the trial court as we would a decree in equity. Our scope of review is narrow.

> A chancellor's findings of fact, when approved by the court *en banc*, have the force and effect of a jury verdict and will not be disturbed on appeal if supported by adequate evidence. *Herwood v. Herwood*, 461 Pa. 322, 336 A.2d 306 (1975). However, the chancellor's inferences and conclusions, which are drawn from the facts, and the application of the law are always subject to review. *Adler v. Montefiore Hospital Association of Western Pennsylvania*, 453 Pa. 60, 311 A.2d 634 (1973), *cert. denied*, 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974).

*McDole v. Duquesne Brewing Co. of Pittsburgh*, 281 Pa. Super. 78, 83, 421 A.2d 1155, 1158 (1980) (quotations and citation omitted).

The record fully supports the court's findings of fact which are substantially as follows.

For some months prior to August 29, 1978, James Supp had been driving a truck for Ajax Forging and Casting Company (Ajax). Supp acted as driver for Ajax pursuant to an agreement, designated as a "lease", between Ajax and Transpersonnel, Inc. (Transpersonnel). By this agreement, Transpersonnel agreed to procure the services of truck drivers and assign them to Ajax. Transpersonnel agreed to perform all payroll operations and carry Workmen's Compensation insurance for each of the drivers assigned under the agreement. On its part, Ajax was given the power to "dispatch, direct the loading and unloading of vehicles, select routes, direct the drivers to pick-ups, deliveries and other matters related to the day-to-day operation of the vehicles utilized by" it. Foremen at various Ajax plants instructed Supp as to what to carry, where to carry it and, occasionally, how to get to his destination. Supp reported his time and mileage to Transpersonnel because he was paid on an hourly basis when loading or unloading his truck and on a mileage basis when he was behind the wheel.

On August 29, 1978, Supp was driving a truck rented by Ajax from Ryder Truck Rental (Ryder). Ajax had instructed him to drive the truck. This truck was covered by a policy of no-fault motor vehicle insurance purchased by Ajax and issued by appellant, Liberty Mutual Insurance Company (Liberty Mutual).[1] Supp was travelling west on Interstate 279 near Pittsburgh when he was involved in an accident. In order to avoid hitting the motorists near him, Supp drove into a concrete barrier, injuring himself in the process.

The Workmen's Compensation carrier engaged by Transpersonnel paid Supp $213.00 per week during the period he

1. Throughout its brief, Erie argues that "the security on the truck was provided for Ryder by Liberty Mutual. Liberty did not provide the security on the vehicle for Ajax." Brief for Appellee at 6. However, this assertion is directly contrary to the trial court's finding that "Ajax rented the Ryder truck and covered it with its own no-fault insurance plan." Tr.Ct.Op. 6/17/81 at 11. See also Tr.Ct.Op. 1/7/82 at 1–2. While Liberty Mutual stipulated at trial that it did act as carrier for Ryder, there was uncontradicted evidence that the truck driven by Supp was covered by a policy issued by Liberty Mutual to Ajax.

was disabled, August 29, 1978 to May 14, 1979. However, Supp allegedly suffered work loss of $434.35 per week. In order to recover the wages lost in excess of the amount received from the Workmen's Compensation carrier, Supp made a claim for no-fault wage loss benefits with both Liberty Mutual, the carrier which issued to Ajax the policy covering the truck, and with Erie Insurance Exchange (Erie), which had issued a no-fault motor vehicle insurance policy to Supp covering his personal automobile. Both carriers denied coverage and Supp instituted this declaratory judgment action against Liberty Mutual and Erie in order to determine which carrier had provided the applicable security. A hearing, limited to the issue of liability, was held on May 14, 1981. On June 17, 1981, the trial judge filed detailed findings of fact and conclusions of law, holding that Liberty Mutual had provided the applicable security and was, therefore, liable for the payment of no-fault benefits to Supp. Liberty Mutual filed exceptions which were heard by a court *en banc* and dismissed by an opinion and order dated January 7, 1982. This appeal followed.

On appeal, Liberty Mutual presents two arguments in support of reversal. First, Liberty Mutual contends that, because the trial court found Ajax to be Supp's "employer", recovery against it was barred by the Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, Art. 1, § 101 *et seq.*, as amended, 77 P.S. § 1 *et seq.*,[2] and several decisions of this Court and the Supreme Court. *Wagner v. National Indemnity Co.*, 492 Pa. 154, 422 A.2d 1061 (1980) (plurality opinion), *affirming*, 266 Pa.Super. 110, 403 A.2d 118 (1979); *Augostine v. Pennsylvania National Mutual Casualty Insurance Co.*, 293 Pa.Super. 50, 437 A.2d 985 (1981); *Adams v. Nationwide Insurance Co.*, 285 Pa.Super. 79, 426

2. Section 303 of the Workmen's Compensation Act, 77 P.S. § 481, states:

(a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

A.2d 1150 (1981); and *Turner v. Southeastern Pennsylvania Transportation Authority*, 256 Pa.Super. 43, 389 A.2d 591 (1978). *See also Motley v. State Farm Mutual Insurance Co.*, 502 Pa. 335, 466 A.2d 609 (1983), *affirming*, 303 Pa.Super. 120, 449 A.2d 607 (1982). Second, Liberty Mutual argues that the trial court erred in concluding that Ajax was Supp's employer and, therefore, the only "applicable security" under § 204(a) of the No-Fault Act, Act of July 19, 1974, P.L. 489, No. 176, Art. II, § 204(a), 40 P.S. § 1009.204(a),[3] is that issued by Erie to Supp personally. Because we find Liberty Mutual's first argument persuasive, we need not consider the second.

■ Our review of the record indicates that the trial court correctly concluded that Ajax was Supp's employer.

[ ]The crucial test in determining whether a servant furnished by one person to another becomes the employe of the person to whom he is loaned is whether he passes under the latter's right of control with regard to not only the work to be done but *also as to the manner of performing it* ....

3. Section 204(a) of the No-Fault Act, 40 P.S. § 1009.204(a), states:
   (a) Applicable security.—The security for the payment of basic loss benefits applicable to an injury to:
   (1) an employee, or to the spouse or other relative of any employee residing in the same household as the employee, if the accident resulting in injury occurs while the victim or deceased victim is driving or occupying a motor vehicle furnished by such employee's employer, is the security for the payment of basic loss benefits covering such motor vehicle or, if none, any other security applicable to such victim;
   (2) an insured is the security under which the victim or deceased victim is insured;
   (3) the driver or other occupant of a motor vehicle involved in an accident resulting in injury who is not an insured is the security covering such vehicle;
   (4) an individual who is not an insured or the driver or other occupant of a motor vehicle involved in an accident resulting in injury is the security covering any motor vehicle involved in such accident.
   For purposes of this paragraph, a parked and unoccupied motor vehicle is not a motor vehicle involved in an accident, unless it was parked so as to cause unreasonable risk of injury; and
   (5) any other individual in the applicable assigned claims plan.

[ ]A servant is the employe of the person who has the *right* of controlling the manner of his performance of the work, irrespective of whether he actually *exercises* that control or not.

*Mature v. Angelo,* 373 Pa. 593, 595–596, 97 A.2d 59, 60 (1953) (citations omitted).

There can be no dispute that the agreement between Transpersonnel and Ajax provided that Ajax possessed such power and right to control Supp's work-related activities. Although for the most part Supp was not restricted in selecting his routes, Ajax did in fact exercise this power several times by directing Supp in the route to follow from one plant to another. The portion of the agreement quoted above also leaves little doubt that Ajax possessed the right to direct the manner in which Supp performed his other employment-related duties as well. Transpersonnel's performance of payroll functions and its payment of Workmen's Compensation insurance premiums do not vitiate Ajax's control over Supp. These record-keeping and insurance coverage functions are peripheral matters which do not control the determination of who was Supp's employer. *Ashman v. Sharon Steel Corp.,* 302 Pa.Super. 305, 314, 448 A.2d 1054, 1058 (1982); *Keller v. Old Lycoming Twp.,* 286 Pa.Super. 339, 351, 428 A.2d 1358, 1364 (1981); *English v. Lehigh County Authority,* 286 Pa.Super. 312, 325, 428 A.2d 1343, 1350 (1981), *allocatur granted 7/17/81.* Moreover, Supp contacted Transpersonnel only when he had a problem with his paycheck or when someone at Ajax directed him to drive an overweight truck. The first contact dealt with the peripheral bookkeeping function discussed above. The second contact, according to Supp's uncontradicted testimony, concerned not the power to direct Supp to drive the truck but who would pay the fine if he was caught. Neither of these two types of contact are sufficient to conclude that Ajax did not have control over Supp's employment-related activities. We therefore conclude that the trial court correctly determined that Supp was an employee of Ajax at the time of the accident.

The trial court recognized that Liberty Mutual, the carrier that had issued the applicable insurance policy to Ajax, Supp's employer, would ordinarily not be liable for the payment of no-fault benefits to its insured's employees. *Wagner v. National Indemnity Co., supra.* *See also Ellisor v. Allstate Ins. Co.,* 325 Pa.Super. 318, 472 A.2d 1138 (1984). The court ruled, however, that because Ajax had not itself provided Workmen's Compensation insurance or benefits for Supp this case was an exception to the general rule embodied in *Wagner* and its progeny.

> [T]he appellate courts ... determined that once an employee is eligible or has received Workmen's Compensation benefits, his employer shall not be fastened with the additional burden of his work loss benefits under the No-Fault Act. We can readily understand and accept that holding with respect to an employer who has paid Workmen's Compensation benefits to his employee. But that is not the fact situation in this case. Here, the plaintiff received no benefits whatsoever from Ajax and Ajax does not have that liability.

Tr.Ct.Op. 1/7/82 at 4.

However, the holding of *Wagner* and the other cases dealing with this situation are not predicated on who pays Workmen's Compensation benefits or premiums on a Workmen's Compensation insurance policy but on who is an employer within the meaning of the Workmen's Compensation Act. It is to employers and, derivatively, to their insurers, that the immunity from liability attaches pursuant to § 303 of the Workmen's Compensation Act. 77 P.S. § 481. In *Wagner,* the Supreme Court noted the two instances in which an employer's no-fault carrier would remain liable for basic loss benefits despite the immunity conferred by § 303. First, if the employee was injured in an employer-furnished vehicle and the "employee was not using the vehicle for any work-related activity", the employer's no-fault carrier would be the applicable source of restoration benefits under § 204(a)(1) because the injury to the employee "was not covered by workmen's compensa-

tion." *Wagner v. National Indemnity Co.*, 492 Pa. at 163, 422 A.2d at 1066. Second, if the injury arises out of the operation of an employer-furnished vehicle and the victim is an employee's "spouse or other relative ... residing in the same household as the employee," even if the injury occurred during the employee's work-related activity, the employer's carrier would again be the applicable source under § 204(a)(1) because the bar of the Workman's Compensation Act "applies only when the spouse or relative attempts to claim through the employee for a work-related injury" to that employee. *Id.*, 492 Pa. at n. 4, 422 A.2d at 1066 n. 4. In this second instance, the injured spouse or relative would be making a claim against the employer's no-fault carrier for his or her own injuries, not for damages sustained as a result of an injury to the employee. These exceptions to the bar of § 303 are thus predicated on the inapplicability of the Workmen's Compensation Act to the injury sustained by the claimant. Where the Act applies, the bar is complete.

■ Moreover, under the Workmen's Compensation Act, the fact that the "lending employer" pays for Workmen's Compensation insurance is no impediment to finding the "borrowing employer" to be immune from suit pursuant to § 303. The means used to fulfill the statutory obligation to provide Workmen's Compensation coverage do not affect the immunity conferred by § 303. *Keller v. Old Lycoming Twp., supra; English v. Lehigh County Authority, supra.* Consequently, despite the nature of the claim being asserted and despite the indirect method by which Workmen's Compensation was provided, the bar of § 303 is not avoided.

■ In the case before us, there is no dispute that the Workmen's Compensation Act applies. Supp was injured while driving the truck from one destination to another as directed by his employer, Ajax. Supp claimed and was paid benefits as required by the Workmen's Compensation Act. The fact that someone other than Ajax paid the premiums on the Workmen's Compensation policy is immaterial. *Keller v. Old Lycoming Twp., supra; English v. Lehigh County Authority, supra.* The Workmen's Compensation

Act bars suit against Ajax as Supp's employer and this also bars recovery against Ajax's insurer, Liberty Mutual. *Motley v. State Farm Mutual Insurance Co., supra; Wagner v. National Indemnity Co., supra; Augostine v. Pennsylvania National Mutual Casualty Insurance Co., supra; Turner v. Southeastern Pennsylvania Transportation Authority, supra.* The trial court erred in holding that Liberty Mutual was liable for basic loss benefits due Supp. Because Liberty Mutual is not the proper source of basic loss benefits, the only other possible source is Erie, Supp's personal no-fault carrier, under § 204(a)(2) of the No-Fault Act.

The judgment of the trial court is reversed and the case is remanded for the entry of judgment in favor of Liberty Mutual Insurance Company and against Erie Insurance Exchange.

Jurisdiction is not retained.