520 A.2d 50

**Craig Newman SHAFFER and William E. Carll, Appellees,**

**v.**

**Eileen R. FLICK, Co-Executor of the Estates of Glenn W. Shaffer and Violet M. Shaffer, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 4, 1986.

Filed Jan. 16, 1987.

Henry G. Beamer, III, Pittsburgh, for appellant.

David W. Swanson, Warren, for appellees.

Before CAVANAUGH, WIEAND and JOHNSON, JJ.

WIEAND, Judge:

This is an appeal from a declaratory judgment. The trial court held that tenants of a farm property, whose lease contained an option to buy, were entitled to the proceeds of a policy of fire insurance, with extended coverage, when they exercised their option after the buildings on the farm had been destroyed by tornado. We affirm.

On or about May 1, 1980, Glenn and Violet Shaffer, husband and wife, decided to retire from farming and leased their farm property, consisting of 250 acres and including three residences, three barns, three silos, a shop and a milkhouse, to their son, Craig Newman Shaffer, and their son-in-law, William E. Carll.[1] The lease agreement, in paragraph 13, granted the tenants an option to buy the farm for $140,000.00. On May 31, 1985, a tornado struck Forest County, killing Glenn and Violet Shaffer and destroying most of the improvements on the farmland. The tenants, pursuant to the terms of the lease agreement, had purchased fire insurance and extended coverage on the farm improvements, naming as insureds themselves and Glenn and Violet Shaffer as the interests of the insureds might appear. As a result, insurance proceeds became payable in the total amount of $147,000.00.[2] Letters testamentary were issued to Eileen R. Flick, and the insurance proceeds were paid to and received by her in her representative capacity. On September 11, 1985 and again on October 23, 1985, Shaffer and Carll gave notice to Flick in writing that they intended to exercise their option to buy the farm and that they wished to apply the insurance proceeds on account of the purchase price. Flick refused to release the

1. Glenn and Violet Shaffer reserved the right to reside in one of the residences during the remainder of their lives.

2. An additional sum of $42,500.00 was payable for loss of the contents of the several buildings. The contents were not subject to the option agreement, however, and these proceeds are not a part of the instant dispute.

insurance proceeds and also refused to execute and deliver a deed for the farm property.

Shaffer and Carll thereupon filed an action for declaratory judgment. They contended that the terms of their agreement required the application of insurance proceeds on account of the purchase price for the farm and that legal and equitable principles, independently of the terms of the agreement, required the same result. Flick denied that the agreement required that Shaffer and Carll receive the insurance proceeds and contended that the attempt to exercise the option had been ineffective because it had been conditional upon receipt of the insurance proceeds.[3] Flick also filed a separate action to have the insurance proceeds declared assets of her parents' estates. All proceedings were consolidated for hearing, after which the trial court determined that Shaffer and Carll had validly exercised the option to purchase the farm and that they were entitled to have the proceeds of the insurance policy applied against the purchase price of the farm.

Our scope of review is narrow. In *Supp v. Erie Insurance Exchange*, 330 Pa.Super. 542, 479 A.2d 1037 (1984), this Court said:

> Because a declaratory judgment action follows "as nearly as may be" the practice and procedure in an action in equity, Pa.R.C.P. No. 1601(a), we will review the determination of the trial court as we would a decree in equity. Our scope of review is narrow.
>
> A chancellor's findings of fact ... will not be disturbed on appeal if supported by adequate evidence. *Herwood v. Herwood*, 461 Pa. 322, 336 A.2d 306 (1975). However, the chancellor's inferences and conclusions, which are drawn from the facts, and the application of the law are always subject to review. *Adler v. Montefiore*

3. This contention is lacking in merit. By letters dated September 11, 1985 and October 23, 1985, appellees unequivocally exercised their option to purchase the property. That appellees indicated in the letters their intent to apply the insurance proceeds toward the purchase price did not make their exercise of the option conditional or equivocal.

*Hospital Association of Western Pennsylvania*, 453
Pa. 60, 311 A.2d 634 (1973), *cert. denied*, 414 U.S. 1131,
94 S.Ct. 870, 38 L.Ed.2d 755 (1974).

*McDole v. Duquesne Brewing Co. of Pittsburgh*, 281
Pa.Super. 78, 83, 421 A.2d 1155, 1158 (1980) (quotations
and citation omitted).

*Id.*, 330 Pa.Superior Ct. at 544, 479 A.2d at 1038. See:
*Shepley v. Dobbin*, 351 Pa.Super. 182, 505 A.2d 327 (1986);
*Lombardo v. DeMarco*, 350 Pa.Super. 490, 504 A.2d 1256
(1985).

"The courts of this Commonwealth recognize the concept
that when an option to purchase real estate is exercised, the
optionee is considered as having had the equitable title to
the property from the date of the option and not from the
date that it is exercised." *Hennebont Co. v. Kroger Co.*,
221 Pa.Super. 65, 72–73, 289 A.2d 229, 233 (1972), citing *In
re Powell's Appeal*, 385 Pa. 467, 123 A.2d 650 (1956). See:
*Detwiler v. Capone*, 357 Pa. 495, 499, 55 A.2d 380, 383
(1947); *Schnee v. Elston*, 299 Pa. 100, 105–106, 149 A. 108,
109 (1930); *Peoples Street Ry. Co. v. Spencer*, 156 Pa. 85,
89–90, 27 A. 113, 114 (1893); *Phoenixville, Valley Forge &
Strafford Electric Railway Co.'s Appeal*, 70 Pa.Super. 391,
396 (1918). Thus, "when the option is exercised, the op-
tionee's ownership reverts to the granting of the option."
*In re Powell's Appeal, supra* 385 Pa. at 474, 123 A.2d at
654, citing *Peoples Street Ry. Co. v. Spencer, supra.* In
*Peoples Street Ry. Co. v. Spencer, supra*, the lessee had
caused the buildings on the demised property to be insured
for the protection of lessor and lessee as their interests
might appear. After the buildings had been burned by fire,
the lessee exercised its option. A dispute arose as to who
was entitled to the insurance proceeds. The Supreme Court
held that upon exercise of the option, the equitable title of
the lessee-optionee reverted back to the date of the original
agreement, and the lessee-optionee became the owner as of

that date, or of the insurance money which stood *pro tanto* in its place.[4]

Thus, the law pertaining to options is similar to that applicable to contracts of sale. Real estate law holds that although a vendor of real estate retains legal title, he is regarded as a trustee of the land for the purchaser, who has equitable title and who may recover the insurance proceeds if a loss occurs. See: 32 P.L.E., *Sales of Realty* § 131. Appellant contends, however, that an option agreement should be treated differently than a contract of sale. In the case of a contract for the purchase of real estate, appellant argues, the buyer is obligated to buy; whereas, in the case of an option, the optionee is not obligated to buy. Therefore, according to this argument, the optionee does not have equitable title to the land but merely a right to elect to buy. As such, appellant contends that the decision of the Supreme Court in *People's Street Ry. Co. v. Spencer, supra,* should be overruled. Inasmuch as there was no real risk of loss to the optionee, she contends, the insurance proceeds should become the absolute property of the optionor without duty to account therefor to the optionee. In support of this argument, appellant cites a decision by the Supreme Court of Oregon in *Strong v. Moore,* 105 Or. 12, 207 P. 179 (1922), which reached a result contrary to and was critical of the Pennsylvania rule. The answers to appellant's argument are several. In the first place, even though the *People's Street Railway* case was decided before the turn of the century, it was a decision by the Supreme Court of this Commonwealth which is binding upon and not subject to being overruled by an intermediate appellate court. Secondly and in any event, the facts of the instant case do not recommend the result for which appellant contends. Because of the circumstances of the instant case and notwithstanding the fact that the option was not

4. It has been held also that "where condemnation of land follows the granting of an option to purchase it and the optionee subsequently exercises the option according to the agreement, the optionee is entitled to the damages due to the taking unless the optionor has expressly reserved them to himself." *In re Powell's Appeal, supra,* citing *Phoenixville, Valley Forge & Strafford Electric Railway Co.'s Appeal, supra.*

exercised until after the loss occurred, it is necessary to relate the transfer of equitable title back to the date of the option contract in order to do equity between the parties.

That is, unless the parties provided otherwise in their agreement. The agreement in the instant case provided, in relevant part, as follows:

TAXES AND INSURANCE.

Lessee shall pay all taxes and premiums for fire and other insurance upon the leased premises promptly as the same shall become due....

Lessee shall insure all buildings upon the leased premises against loss by fire and other risks normally insured under extended coverage insurance in such amounts and with such companies as shall be agreeable with the Lessor and shall cause the insurer to furnish certificates of insurance and copies of the policies to the Lessor whose interest shall be noted upon the policies as Insured parties as their interest appears.

In paragraph 8 the following appeared:

DAMAGE OR DESTRUCTION BY FIRE.

In event any of the buildings upon the leased premises are damaged or destroyed by fire the same may be repaired or replaced out of insurance proceeds at the option of the Lessee and if the same are not repaired or replaced the proceeds of insurance payable thereon shall be paid to the Lessor and in such event, the net amount of said proceeds paid to and received by the Lessor shall be deducted from the option price in the event the Lessee shall exercise Lesses's option to purchase as hereafter provided for.

Appellant contends that these provisions reflect an intention on the part of the parties to limit the optionees' right to benefit from the insurance proceeds to situations in which the loss was caused by fire. By providing that the optionees would receive a credit for the insurance proceeds payable upon a loss of the premises because of fire, it is argued, the parties intended that the insurance proceeds should revert unconditionally to the optionors if the loss

were caused by an agency other than fire. We reject this argument.

In *O'Farrell v. Steel City Piping Co.*, 266 Pa.Super. 219, 403 A.2d 1319 (1978), we said:

> In construing a contract, a court's paramount consideration is the intent of the parties. If the language of the contract is unambiguous and susceptible of only one interpretation, a court will determine the parties' intention on the basis of the clear wording of the contract. If the language of the contract is ambiguous and susceptible of two interpretations, then the court will adopt the interpretation which, under all the circumstances, ascribes the most reasonable, probable and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished.

Id., 266 Pa.Superior Ct. at 229, 403 A.2d at 1324. When we ascribe to the lease agreement in this case the most "reasonable, probable and natural" intent of the parties, "bearing in mind the objects manifestly to be accomplished," it seems clear that the parties did not intend to subvert the substantive law with respect to "extended coverage" risks while adhering to it solely with respect to "fire" losses. Rather, the parties contemplated fire insurance with extended coverage and intended that if the lessees exercised the option after destruction of the improvements, the lessees were to be entitled to a credit on account of the price to the extent that the lessors had been paid the proceeds of insurance purchased by appellees. The parents wished to retire from farming, and they wanted their son and son-in-law to continue farming the land. Therefore, they negotiated an agreement which would enable their wishes to be achieved while, at the same time, providing for their own security. The lessors did not intend to acquire a windfall at the lessees' expense. This intention became apparent to the trial judge who heard the testimony and saw the witnesses. We perceive no valid reason for disagreeing with the result which he achieved.

Affirmed.