602 A.2d 877

**CLEARFIELD VOLUNTEER FIRE DEPARTMENT, Fair and Park Board and the Clearfield Foundation**

v.

**BP OIL, INC. (formerly Boron Oil Company) and Shawville Coal Company, Inc.**

**Appeal of SHAWVILLE COAL COMPANY, INC.**

Superior Court of Pennsylvania.

Argued Aug. 21, 1991.

Filed Feb. 6, 1992.

Paul D. Burke, Pittsburgh, for appellants.

Carl A. Belin, Jr., Clearfield, for appellees.

Before WIEAND, CIRILLO and JOHNSON, JJ.

WIEAND, Judge:

In this action for declaratory judgment, the trial court entered an order terminating a coal lease for a portion of the demised premises. The trial court rejected the lessee's contention that the lease had been for a single, undivided tract. Post-trial motions were dismissed, and this appeal followed. We reverse.

Pursuant to the terms of a written agreement of lease entered in 1956 between a predecessor of Clearfield Volunteer Fire Department, the present lessor, and Shawville Coal Co., the lessee, the coal company was granted the exclusive right and privilege to mine and remove all strip mineable, merchantable and profitable seams of coal until the coal was exhausted from a 256 acre tract of land in Lawrence Township, Clearfield County. The coal company was also given the right of ingress, egress and regress over, into and across the surface of the tract and the right to place thereon machinery, equipment and waste. In ex-

change, the coal company was required to pay the owner a minimum monthly royalty of fifty ($50) dollars. So long as this royalty is paid, the agreement provides, the lease cannot be cancelled because of a delay in coal production. At the time of entering the lease, State Route 879 passed through the tract. Later, Interstate Route 80 was constructed and also intersected the leased property. As a result, the tract was divided into a northern parcel and a southern parcel. The southern parcel is involved in the present dispute.

Clearfield Volunteer Fire Company filed an action for a judgment declaring that the lease had expired and was subject to termination with respect to the southern portion of the demised tract. The lease had expired, it was contended, because the coal remaining in the southern parcel could no longer be mined profitably. The trial court, after hearing the evidence, agreed that the coal which could profitably be mined had been exhausted and held, because the tract had been bisected by highway construction, that the coal company's leasehold estate in the southern parcel should be terminated.

Our standard of review was stated in *Federal Kemper Ins. Co. v. Neary*, 366 Pa.Super. 135, 530 A.2d 929 (1987), as follows:

> In reviewing a judgment entered in a declaratory judgment action, we are bound by the same narrow standard of review which exists in equity actions. *Shaffer v. Flick*, 360 Pa.Super. 192, 195–196, 520 A.2d 50, 51 (1987); *Supp v. Erie Insurance Exchange*, 330 Pa.Super. 542, 544, 479 A.2d 1037, 1038 (1984). A judgment of a trial court will not be reversed absent a clear abuse of discretion or error of law. *Lombardo v. DeMarco*, 350 Pa.Super. 490, 495, 504 A.2d 1256, 1258 (1985). The test is not whether we would have reached the same result on the evidence presented, but whether the trial court's conclusion can reasonably be drawn from the evidence. *Estate of Tippins*, 487 Pa. 107, 112 n. 2, 408 A.2d 1377, 1380 n. 2 (1979); *Lombardo v. DeMarco, supra,* 350 Pa.Super. at

495, 504 A.2d at 1258; *Hoffman v. Gekoski*, 250 Pa.Super. 49, 52, 378 A.2d 447, 448 (1977). Where the trial court's factual determinations are adequately supported by the evidence, we may not substitute our judgment for that of the trial court. *Frowen v. Blank*, 493 Pa. 137, 142, 425 A.2d 412, 415 (1981).

*Id.* 366 Pa.Super. at 139, 530 A.2d at 930–931. See also: *State Farm Mut. Ins. Co. v. Judge*, 405 Pa.Super. 376, 379, 592 A.2d 712, 713 (1991).

Here, we accept the trial court's finding that the only coal remaining on the southern parcel cannot be mined profitably. Therefore, we must determine whether that portion of the leasehold estate can be terminated where coal continues to be mined profitably from the northern parcel and while the agreed rent continues to be paid.

■ In *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385 (1986), the Supreme Court observed:

A lease is a contract and is to be interpreted according to contract principles. *Pugh v. Holmes*, 486 Pa. 272, 284, 405 A.2d 897, 903 (1979). Determining the intention of the parties is a paramount consideration in the interpretation of any contract. *Robert F. Felte, Inc. v. White*, 451 Pa. 137, 143, 302 A.2d 347, 351 (1973); *Unit Vending Corp. v. Lacas*, 410 Pa. 614, 617, 190 A.2d 298, 300 (1963). The intent of the parties is to be ascertained from the document itself when the terms are clear and unambiguous. *Steuart v. McChesney*, 498 Pa. 45, 48–49, 444 A.2d 659, 661 (1982); *In re Estate of Breyer*, 475 Pa. 108, 115, 379 A.2d 1305, 1309 (1977).

*Hutchison, supra,* 513 Pa. at 200, 519 A.2d at 389–390. As a general rule, "[t]he law will not imply a different contract than that which the parties have expressly adopted." *Id.,* 513 Pa. at 198, 519 A.2d at 388.

■ In the instant case, the demised premises consist of an undivided tract of 256 acres. The lease contains no provision for subdividing the same into lesser tracts. Moreover, the right of the tenant to use the tract is not limited

solely to the mining of coal. If a portion of the leasehold estate can no longer be utilized in connection with the direct mining of coal, it may nevertheless be used, as the parties expressly provided, for the storage of machinery, equipment and waste. Because the lease contemplated an estate in an undivided tract of 256 acres, we search in vain for language in the lease that would permit the lease to be terminated acre by acre as coal is removed.

Although conceding that it has been unable to find authority to support the trial court's division of the tract into two smaller tracts, the lessor-appellee contends that this Court should affirm the trial court's action by taking a practical approach rather than by strictly interpreting the agreement of the parties. By permitting a partial termination of the lease, it is argued, the trial court followed a policy which permits the "untrammeled development" of the land. Any other interpretation, it is argued, would be tantamount to creating a perpetual estate in the southern tract. We reject this argument.

There is no greater danger of creating a perpetual estate in the southern part of the leasehold than in any other part of the leased premises. The parties, by their agreement of lease, granted to the coal company a leasehold interest in the entire tract and expressly incorporated therein the circumstances under which the leasehold estate should come to an end. The profitable coal reserves have not been depleted, and the coal company continues to pay the royalty which it is required to pay in order to preserve its rights to use the land. Whatever period of time may be required to exhaust the coal, the terms of the lease make it abundantly clear that it was within the contemplation of the parties.

Appellee's reliance upon decisions in *Hutchison v. Sunbeam Coal Corp., supra, Hindman v. Farren,* 353 Pa. 33, 44 A.2d 241 (1945), and *Frenchak v. Sunbeam Coal Corp.,* 344 Pa.Super. 37, 495 A.2d 1385 (1985), criticized on other grounds by *Hutchison v. Sunbeam Coal Corp., supra,* is misplaced. These decisions provide guidance to courts which are called upon to interpret ambiguities in

lease agreements. In such cases, it is sound policy to adopt an interpretation which does not impose on land undue restrictions tending to deprive the owner of the customary rights, privileges and incidents of ownership. In the instant case, however, the terms of the lease are not ambiguous. Indeed, neither party to the present litigation has argued that the intent of the parties failed to be expressed clearly in the written agreement. Where the terms of the lease are clear and free from doubt, it lies with the courts to enforce the agreement which the parties made. Here, the agreement provides for a leasehold estate in an undivided tract of 256 acres, which is not to be terminated unless and until coal can no longer be mined economically from the entire tract.

The lessor-appellee argues that the demised premises have in fact been divided by the construction of a highway and that to allow the lease to continue with respect to the southern parcel will render it unproductive and wasteful. It is clear, however, that the terms of the lease do not contemplate a partial termination. One again searches in vain for the trial court's authority to alter the terms of the lease by removing therefrom a piece of the entire leasehold estate. In this respect it is revealing that the court, although willing to deprive the lessee of a portion of the leased premises, made no attempt to reduce the amount of rent or royalties which the lessee was required to pay for the remaining part of the leased real estate.

Finally, we do not share the concern of the lessor-appellee that a failure to order partial termination of the lease will result in an unproductive and wasteful piece of land. The terms of the lease recognize that the coal company's operation may require the use of some of the land for the storage of machinery, equipment and waste. So long as the southern parcel is used as authorized by the terms of the lease, neither the lessor nor the court may interfere to terminate that portion of the leasehold estate merely because of a belief that it can be used more productively than it is presently being used.

We conclude, therefore, that the trial court's decree had the effect of rewriting the agreement between the parties. By doing so, the court, arbitrarily and without authority, deprived appellant-lessee of the benefits of its bargain. This was error. The declaratory judgment entered by the trial court, therefore, must be reversed.

Judgment reversed.

CIRILLO, J., files a Dissenting Opinion.

CIRILLO, Judge, dissenting:

The majority has failed to address the inequity of allowing land to stay unproductive in the hands of a lessee when there are profitable and beneficial uses available to the lessor. I must, therefore, respectfully dissent.

The majority decides that the trial court should not have regarded the southern parcel as a separate block of land because it paid consideration for the lease of the whole property, the use of the parcel for other purposes was an expressly stated benefit of the lease, and the lease did not contemplate subdivision of the land. I disagree. In *Frenchak v. Sunbeam Coal Corp.*, 344 Pa.Super. 37, 44, 495 A.2d 1385, 1389 (1985), this court stated that " '[i]t is against the policy of the law to unduly restrict the use of land so that the owner is deprived of the usual rights, privileges, and incidents of ownership and possession.' " *Id.*, 344 Pa.Superior Ct. at 41, 495 A.2d at 1387.

I think this policy is applicable to the instant case. Were the lease not terminated the resultant non-use of the land would be wasteful and unproductive. If mining the southern tract is no longer economical or practical, allowing the coal mining lease to continue with respect to that parcel would severely circumscribe other profitable and beneficial uses of the land. *Frenchak, supra.* We must always be mindful that equity abhors a forfeiture. However, we must also consider that when a forfeiture does equity, as it would in this case, the interest in using the land productively outweighs the nonessential and inefficient uses of the tract.

*See Frenchak,* 344 Pa.Super. at 43, 495 A.2d at 1389. Therefore, the trial court's decision to treat the tracts separately was not, in my opinion, erroneous. Interstate 80, a limited access highway, effectively separated the two parcels, severely limiting the access between the two parcels. Furthermore, the record reveals that the two tracts had separate mining permits and were run as two separate operations. I would conclude, therefore, that the trial court did not abuse its discretion or commit an error of law in deciding that the original tract should be divided into two parcels. *Federal Kemper Ins. Co. v. Neary,* 366 Pa.Super. 135, 139, 530 A.2d 929, 930–31 (1987); *Lombardo v. DeMarco,* 350 Pa.Super. 490, 495, 504 A.2d 1256, 1258 (1985).

The majority also concludes that, where a lease provides for permissible uses such as constructing and operating roads for mining purposes, keeping machinery and other equipment on the land, hauling coal over the premises from other lands, and using the land as a coal yard, the lease should not terminate simply because the coal mining has ended. This discussion fails to recognize the present nature of the land in question. The parcel has been intersected by a limited access interstate highway. This highway impedes travel and access to the southern parcel and thus frustrates the benefit of the additional uses provided for in the lease.

Therefore, I would apply the general rule used to examine coal leases. A coal lease grants the lessee the right to remove the coal beneath the surface; however, when that coal supply is exhausted or unmerchantable, "all of the estate is consumed or reverts back to the owner of the surface." *United States Steel Corporation v. Commonwealth, Dept. of Environmental Resources,* 17 Pa.Commw. 594, 333 A.2d 486, 488 (1975). The trial court found that the coal of merchantable quality and quantity from the parcel had been exhausted. Since the trial court determined that the lease, by its own terms, provided for termination upon the exhaustion of the coal, the trial court correctly terminated the lease. The other uses for the land that Shawville contends should require the lease to remain

intact with respect to the southern parcel are all peripheral, secondary uses stemming from its right to mine coal.[1] As stated earlier, the southern parcel is now a separate and distinct parcel of land. Permitting Shawville to retain the unprofitable southern tract while the coal in the northern parcel is mined would permit Shawville to hold the unused tract perpetually. *See Hutchison,* 513 Pa. at 202 n. 5, 519 A.2d at 390 n. 5 ("a lease will not be construed to create a perpetual term unless the intention is expressed in clear and unequivocal terms").

After a complete review of the trial court's decision, I find that the trial court committed no error of law or abuse of discretion and that its decision was supported by competent evidence. *See Federal Kemper, supra; Lombardo, supra.* Therefore, I must respectfully dissent.

---

**1.** Furthermore, denying Shawville the tangential uses of the southern tract should have no affect on its operations as Shawville worked the two tracts separately.