J-A26021-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| SBA TOWERS II LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WIRELESS HOLDINGS, LLC AND JEFF | : | No. 325 WDA 2018 |
| MACALARNEY | : | |

Appeal from the Order Entered February 8, 2018
In the Court of Common Pleas of Blair County Civil Division at No(s):
2016 GN 01215

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY SHOGAN, J.:                    FILED MARCH 19, 2019

SBA Towers II LLC ("SBA" or "Appellant") appeals from the trial court's order granting in part and denying in part Appellant's motion for an injunction against Wireless Holdings, LLC, and Jeff MacAlarney (collectively "Appellees"). After careful review, we affirm.

The instant case involves a lease ("the Lease"), wherein Appellees leased a portion of their premises to Appellant in December of 2009.  The subject property contains a cellular tower and related communication facilities. Appellant is one of several tenants at the site, some of whom are storing equipment there worth millions of dollars.  Paragraph 18 of the lease contains the following language:

> [Appellant] shall have at all times during the initial term or renewal term the right of access to and from the Leased Space and all utility installations servicing the Lease Space on a 24 hours per day/7 days per week basis, on foot or by motor vehicle,

including trucks, and for the installation and maintenance of utility wires, cables, conduits and pipes over, under and along the right-of-way extending from nearest accessible public right-of-way.

Lease, 12/21/09, at 4, ¶18.

Prior to filing for injunctive relief, Appellant had 24/7 access to the site via lock box. Appellees changed the procedure and instead instituted a call-in system, whereby Appellant could seek access during non-regular business hours by calling Appellees, and one of Appellees' representatives would meet Appellant at the property in less than one hour and provide access. Appellees also began to require that Appellant's employees check in before entering the premises and required background checks for some of Appellant's subcontractor's employees. On April 15, 2016, Appellant filed a motion for injunctive relief, seeking to enjoin Appellees from interfering with Appellant's 24/7 access to the property. Motion for Temporary Injunction, 4/15/16. Specifically, Appellant sought to enjoin Appellees from blocking physical access to certain parts of the property and requiring individuals who worked for Appellant to provide a photo identification and criminal background check before allowing access to the site. Id. The trial court granted Appellant's motion and issued a preliminary injunction enjoining Appellees from "engaging in any conduct that in any way interferes with or obstructs [Appellant], its tenants, any contractors, or subcontractors access to the leased premises...." Order of Court, 4/15/16.

The trial court held a hearing on May 8, 2017. Following the hearing, and after the submission of briefs on the matter, the trial court issued its opinion and order. Opinion, 2/8/18. In it, the court noted that the Lease did not specifically provide whether Appellant's access to the property was to be unrestricted, as Appellant argued, or subject to reasonable restrictions, as Appellees argued. Id. at 6. Ultimately, the trial court found the Lease to be ambiguous and susceptible to differing interpretations. Id. at 7. Noting that the interpretation of a contract is a question of law, the trial court interpreted the Lease as allowing for reasonable security. Id. at 8. The trial court affirmed the preliminary injunction's prohibition against Appellees physically blocking Appellant's access to the property. However, the court refused to enjoin Appellees from requiring the following: that visitors check in at the main office, that Appellant use a call-in system as opposed to a lock box for after-hours access, that Appellant's employees show their identification badges before gaining access, and that certain subcontractors provide background checks. Id. at 8–9.

Before we reach the merits of the appeal, we must address Appellant's failure to file post-trial motions pursuant to Pa.R.C.P. 227.1(c)(2), which states that "[p]ost-trial motions shall be filed within ten days . . . after the decision in the case of a trial without jury." A party must file post-motions in order to preserve issues on appeal. The failure to raise an issue in a post-trial motion results in waiver for purposes of the appeal. See, e.g., Lane

Enterprises v. L.B. Foster Co., 710 A.2d 54 (Pa. 1998). Given the above, this Court entered a per curiam order, directing Appellant to show cause, in the form of a letter to the Prothonotary, why its appeal should not be dismissed. Order, 4/5/18.

In its response, Appellant cited to Pa.R.A.P. 311(a)(4)(ii), relating to interlocutory appeals. That rule states in relevant part,

> (a) General Rule.—An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from:
>
> * * *
>
> (4) Injunctions.--An order that grants or denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction unless the order was entered:
>
>> (i) Pursuant to 23 Pa.C.S. §§ 3323(f), 3505(a); or
>>
>> (ii) After a trial but before entry of the final order. Such order is immediately appealable, however, if the order enjoins conduct previously permitted or mandated or permits or mandates conduct not previously mandated or permitted, and is effective before entry of the final order.

Pa.R.A.P. 311(a)(4)(i–ii). Appellant also cited to this Court's recent opinion in TA Robinson v. Bioni, 178 A.3d 839 (Pa. Super. 2017). In Bioni, the appellants, relying on Pa.R.A.P. 311(a)(4)(ii), filed an immediate appeal, without filing post-trial motions, from an order granting permanent injunctive

relief and a prescriptive easement in favor of the appellees. Bioni, 178 A.3d at 840. The appellees commenced the action after the appellants erected a steel post on the edge of their property, which obstructed a portion of an easement/road that appellees believed they had a right to use. Id. at 841. The trial court issued an order requiring appellants to show cause why the appeal should not be dismissed for failure to file post-trial motions, pursuant to Pa.R.C.P. 227.1, and the appellees filed a motion to quash.[1] The Bioni Court discharged the order to show cause and deferred the appellees' motion to quash to the Court's merits panel. Bioni, 178 A.3d at 843.

Ultimately, the Bioni Court found that the appeal was properly before it, despite the appellant's failure to file post-trial motions. Specifically, we found that under Pa.R.A.P. 311(a)(4)(ii), "an appeal may be taken from an order that (because a final judgment has not been entered) is not otherwise appealable under Rule 311(a)(4)(ii) if[:] (1) the order enjoins conduct previously allowed or allows conduct previously prohibited[;] and (2) the injunction takes effect before entry of a final judgment." Id. at 847. In Bioni,

_____

[1] Pa.R.C.P. 227.1(c) states in relevant part:

(c) Post-trial motions shall be filed within ten days after

    (1)    verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial; or

    (2)    notice of nonsuit or the filing of the decision in the case of a trial without jury.

neither party moved to have the trial court direct the entry of judgment in favor of any party, pursuant to Pa.R.C.P. 227.1(a)(2); thus, this Court found that no final judgment had been entered. Id. at 846. Moreover, as the permanent injunction changed the status quo by prohibiting conduct that had not been previously enjoined, this Court found that the appeal was properly before the Court because the trial court's order was appealable without the need for post-trial motions. Id. at 848.

In the instant case, we find the appeal is properly before us because the two prongs of the test set forth in Bioni are satisfied. First, neither party filed a post-trial motion seeking entry of a final judgment, and the injunction took effect before the entry of a final judgment. Second, the order, which granted Appellant's request for injunctive relief in part and denied it in part, constitutes a departure from the status quo. Pursuant to the preliminary injunction, Appellees were enjoined from utilizing any additional security measures. Under the terms of the permanent injunction, Appellees were not enjoined from utilizing reasonable security measures. Therefore, Appellant did not need to file post-trial motions, and the case is properly before us.

Appellant presents the following questions for our review:

1. Whether the [t]rial [c]ourt erred in failing to grant the injunctive relief requested by [Appellant?]

2. Whether the [t]rial [c]ourt improperly mandated changes to the parties' lease when no Petition or Bond was posted by [Appellees] seeking such equitable relief and [Appellant] was not put on notice of the potential that such injunctive relief could be issued[?]

Appellant's Brief at 2.

In support of its first issue, Appellant argues that the trial court erred when it failed to issue a permanent injunction. Appellant's Brief at 11. Appellant alleges that the trial court erred when it found the Lease's language relating to Appellant's 24/7 access to the property ambiguous. Id. Appellant further argues that even if the language in the Lease was ambiguous, the trial court erred in failing to consider the parties' course of performance. Id. at 14.

The grant or denial of a permanent injunction is a question of law. Bioni, 178 A.3d at 844. "Regarding the trial court's legal determination, our standard of review is de novo, and our scope of review is plenary." Id. at 843. "As in all equity matters, however, we must accept the trial court's factual findings and give them the weight of a jury verdict when they are supported by competent evidence." Id. Further, it is well established that a lease is a contract and should be interpreted according to contract principles. Hutchinson v. Sunbeam Coal Co., 519 A.2d 385, 389 (Pa. 1986). A contract is ambiguous where "it is reasonably susceptible of different constructions and capable of being understood in more than once sense." Id. at 390. "To determine whether there is an ambiguity, it is proper for a court to hear evidence from both parties and then decide whether there are objective indications that the terms of the contract are subject to different meanings." Nicholas v. Hoffman, 158 A.3d 675, 693 (Pa. Super. 2017). The mere fact that the parties disagree as to the terms of a contract does not

render it ambiguous. Id. Where a lease is ambiguous, "it is sound policy to adopt an interpretation which does not impose on land undue restrictions tending to deprive the owner of the customary rights, privileges and incidents of ownership." Clearfield Volunteer Fire Dept. v. BP Oil, Inc., 602 A.2d 877, 880 (Pa. Super. 1992).

In its opinion, the trial court found that the Lease does not specify whether Appellant's access is restricted or unrestricted. Trial Court Opinion, 2/8/18, at 6. Given this fact, the trial court determined that the language is susceptible to more than one meaning and does not specifically support Appellant's contention that it should have unfettered access to the property. Similarly, it does not support Appellees' contention that access is subject to reasonable restrictions essential to Appellees' duty to provide security for the premises. Id. After determining that the Lease was ambiguous, the trial court looked to the fact that multiple companies, including Appellant, were storing millions of dollars worth of equipment on the premises and found a need for reasonable security. Id. at 8.[2] We agree.

_____

[2] In finding that 24/7 access allows for reasonable restrictions, the trial court noted that Paragraph 15, the Hold Harmless Clause in the Lease, stated that Appellees would be liable for damages caused by misconduct or negligence of Appellees, "or any of [Appellees'] agents, servants, employees, licensees, or invitees." Lease, 12/21/09, at 3, ¶ 15. The court noted that because the police had been involved in several incidents involving individuals trying to access the premises, Appellees were required to take action to improve security. Id. at 9.

- 8 -

As the trial court noted, the Lease does not specify whether Appellant's access to the leased space, which as per the terms of the Lease allows Appellant access on "a 24 hours per day/7 days per week basis," is restricted or unrestricted. Lease, 12/21/19, ¶ 18. Appellant argues that "the Lease clearly established [Appellant] had the right to access the property on a '24/7' basis, without any caveats, limits or other restrictions provided in the Lease." Appellant's Brief at 13. Appellees contend Appellant's 24/7 access to the property is "not in any way hampered" by the security restrictions Appellees have put in place. Appellees' Brief at 15. Therefore, as the trial court found, the Lease does not state whether Appellant's access is unfettered or subject to security measures, and we agree that the terms of paragraph 18 of the Lease are ambiguous.

Appellant next argues that even if the Lease is ambiguous, the trial court erred because it failed to consider the parties' course of performance. Appellant's Brief at 14. Specifically, Appellant argues that the parties' course of performance over the first seven years of the Lease establishes that Appellant's right to the property was unrestricted. Id. at 14–15.

This Court has reviewed the transcript from the May 8, 2017 hearing on the preliminary injunction. We note that the trial court heard testimony from both Appellant and Appellees regarding Appellant's ability to access the property via lock box, in an unrestricted manner, until Appellees introduced the security measures at issue. N.T. (Preliminary Injunction hearing), 5/8/17,

at 11, 12, 54. However, Appellant's argument fails to take into consideration the security breaches that occurred at the subject property, which necessitated the implementation of reasonable security measures. When determining whether the Lease was ambiguous, the trial court looked to the testimony of Appellee, Jeff MacAlarney. It noted that Mr. MacAlarney testified that the additional security measures became necessary following multiple security concerns, including one break-in, and the disappearance of a key from the lock box. Trial Court Opinion, 2/8/18, at 4. The trial court also viewed the subject premises and noted that the location is generally accessible to the public and sits directly across from a Motel 6. The court ultimately found that "there is a legitimate security concern which fairly suggests a need for some additional security." Id.

Further, in interpreting the terms of the Lease, the trial court underscored another provision in the Lease, the Hold Harmless Clause, which states:

> Lessor will be held harmless by Lessee from any liability for damages to any person or any property in or upon the Leased Space at Lessee's invitation, or for any damages to person or property resulting from the actions of the Lessee (including damages caused by or resulting from the existence of the Structures) on the Lease Space, unless the damages are caused by, or are the result of, the misconduct or negligence of Lessor or any of Lessor's agents, servants, employees, licensees, or invitees.

Lease, 12/21/09, at 3, ¶ 15 (emphasis added). The trial court noted that because Appellees were aware of unauthorized individuals "hanging around"

the property and security breaches that required police involvement, the Lease required that Appellees take action to insure that the property remained secure. Trial Court Opinion, 2/8/18, at 9. The trial court further found that although the criminal background check for subcontractors who are not Verizon or SBA employees was required by another tenant at the property, specifically the County 911 Center, that requirement was not unreasonable and not subject to injunctive relief. Id.

> Ultimately, the trial court reached the following conclusions:
>
> 1) the [L]ease is ambiguous; 2) there is evidence to suggest the property of the tenants (again including [Appellant]) might be at risk; and 3) the [Appellees have] an affirmative obligation to reasonably protect [Appellant's] property (especially where they are on notice of recent attempts to intrude on the premises by strangers). Under those circumstances, we resolve the ambiguity in favor of reasonable security and decline to conclude the actions taken are per se unreasonable.

Id. at 9–10. Given our finding that the Lease is ambiguous as to the right to restricted or unrestricted access, we conclude that the trial court did not err when it found that Appellees have an affirmative obligation to protect the property of both Appellant and Appellees' other tenants, and that it correctly resolved the ambiguity in favor of reasonable security measures.

In support of its second issue, Appellant posits that the trial court erred when it inserted "new and onerous terms" into the Lease, although Appellees did not request any such equitable relief. Appellant's Brief at 15. Specifically, Appellant avers that although Appellees opposed equitable relief sought by Appellant, Appellees failed to seek any equitable relief, as "neither requested

the [t]rial [c]ourt to equitably reform the Lease, nor did either of them seek to enjoin [Appellant] from exercising its right to access when the Lease provides for no such restrictions." Appellant's Brief at 16. In what appears to be an attempt to re-argue that the Lease in this case was not ambiguous, Appellant asserts that the trial court erred by "reform[ing] the parties' Lease by allowing [Appellees] to limit [Appellant's] access to the Subject Property, in contravention of the clear terms of the Lease and the parties' course of performance thereunder." Appellant's Brief at 17.[3]

In support of this issue, Appellant relies on Bioni, 178 A.3d 839. In Bioni, this Court vacated a portion of the trial court's order that granted the general public an easement across the appellant's property after finding that the neither party sought a public easement, nor did the township or any other public body intervene seeking to establish that such an easement existed. Id. at 851. In vacating that portion of the trial court's order, this Court noted that there was a "dearth of facts in support of a prescriptive public easement," and also noted that there was little testimony regarding who used the easement at issue, other than the parties to the dispute. Id.

In contrast, in the instant case, Appellant sought a permanent injunction allowing it unfettered access to the subject property, alleging that the Lease

_____

[3]   Although Appellant asserts that the Lease provides for no security restrictions, that statement is directly contradicted by the trial court's opinion and order in which it found the Lease was ambiguous regarding whether Appellant's access was restricted or unrestricted.

was unambiguous and allowed for such access. Although the trial court granted Appellant a preliminary injunction, following a hearing and briefing from the parties, the court found the Lease was ambiguous. It resolved the ambiguity in favor of reasonable security measures and denied Appellant's request that Appellees be enjoined from implementing them. Trial Court Opinion, 2/8/18, at 10. The trial court did not, as Appellant argues, reform the parties' lease "in contravention of the clear terms of the Lease." Appellant's Brief at 17. Thus, Appellant is due no relief.

Order affirmed.

P.J.E. Bender joins the Memorandum.

Judge Murray files a Concurring & Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/19/2019